**Robert Muller TAYLOR, Petitioner,**

v.

**STATE OF MINNESOTA, Respondent.**

**No. 3–71 Civ. 244.**

United States District Court,
D. Minnesota,
Third Division.

April 3, 1972.

Robert Muller Taylor, pro se.

NEVILLE, District Judge.

Presented to the court pro se by a Minnesota State prisoner is a petition for a writ of habeas corpus. After a jury trial in the District Court of Hennepin County, Minnesota, defendant was found guilty on each of the seven counts of the information filed against him, i. e., kidnapping, aggravated assault, aggravated rape, indecent liberties, aggravated robbery, prostitution and coercion. The court sentenced defendant on January 22, 1969 to a term of 0 to 40 years on the kidnapping charge. The conviction was affirmed by the Minnesota Supreme Court, State of Minnesota v. Taylor, Minn., 187 N.W.2d 129 (1971). The petition for a writ of habeas corpus in this court was referred to and the record reviewed by the United States Magistrate. The court signed an order denying the petition for failure to exhaust state remedies and denied a request for a certificate of probable cause. On appeal, the Court of Appeals held that since all of petitioner's present grounds for habeas corpus were presented to the Minnesota Supreme Court on his appeal there and decided adversely to him, he had in fact exhausted his state remedies and this court was directed to proceed to review the merits of the constitutional issues presented. Taylor v. State of Minnesota, 450 F.2d 1110 (8th Cir. 1971). Accordingly the court after review again by the United States Magistrate has read the entire six volumes of the transcript which include one volume reporting a preliminary hearing and one volume reporting a pretrial hearing held pursuant to the rule of State ex rel. Rasmussen v. Tahash, 272 Minn. 539, 141 N.W.2d 3 (1965), at which latter hearing motions to suppress seized evidence and other matters were determined adversely to defendant. Since defendants assertions and claimed errors are based solely on the record of the trial, an evidentiary hearing would

seem to accomplish nothing and so the court did not order one.

▮ The facts of the case are well capsulized in the Minnesota Supreme Court opinion, *supra,* and need not be restated here. Petitioner, in a letter to the court dated February 9, 1972 states:

"I would like to point out the Minnesota Supreme Court decision. The court's decision is based on the emotional aspect of the alleged crimes. It became so involved in the details of the crimes its vision was clouded completely concerning the constitutional violations that happened during the trial. But because of the political element of State Supreme Court which sometimes is more important than a person's constitutional rights. Minnesota Supreme Court's decision is a clear example of State court evading the real allegations before the court and using the emotional aspect of the alleged crime as a means to deny."

This court finds no substance to any portion of that charge. The Minnesota Supreme Court squarely met the constitutional issues and the charge that it is politically motivated is wholly without substance and unsubstantiated by anything in the record or otherwise.

It is clear to the court from reading the testimony of the sordid and revolting events which occurred August 5 and 6, 1968, that the evidence of defendant's guilt is overwhelming. No reasonable person could read the record impartially and conclude anything other than that there was very substantial evidence that defendant was guilty of the most heinous, cruel and threatening conduct and that there was a strong basis for the finding of guilty as charged. This of course does not mean to say that violations of defendant's constitutional rights, if such occurred, should or can be regarded as mere harmless error or disregarded by this court. These have been carefully examined and not, as petitioner would accuse, in the light of the "emotional aspect of the alleged crimes,"

but in light of Federal law and decisions.

▮▮ The function of this court in a petition for writ of habeas corpus such as this is not that of an appellate court and is not to review the rulings of the trial and the Minnesota Supreme Court. The court does not consider the matter *de novo,* that is as though presented to it in the first instance, and attempt to substitute its judgment for that of the trial and Minnesota Supreme Court as to how it would have ruled on objections and motions had it been the trial judge. This approach is foreclosed to this court. This court confines itself to a detailed perusal of the record of the trial to determine whether there has been any violation or infringement of defendant's rights under the United States Constitution. The State court determines its own rules of procedure and substantive law and though these might differ (the court does not imply they would) from the rulings this court would make, such do not reach constitutional heights unless the same or a cumulation thereof, were so erroneous and so completely prejudicial as to deny defendant a fair trial and thus a denial of due process.

By no stretch of imagination could or can it be said that defendant's trial was a "farce or mockery of justice". The trial judge was very attentive and fair in his rulings, his instructions were full and equitable and his rulings on evidence and otherwise do not show any bias, prejudice or disregard of a fair trial or defendant's rights. The state's case was strong, was corroborated in most particulars and, the Minnesota Supreme Court observed:

"Although there was not much substance to the defense presented, it is apparent that the defense counsel made the most of what he had to work with."

Defendant assigns five alleged errors occurring at trial which are substantially a paraphrasing or restatement from his counsel's brief to the Minnesota Su-

preme Court of alleged trial court errors. Only the following can possibly involve any constitutional rights.

1. An unreasonable search and seizure in violation of the IV Amendment to the United States Constitution, though made after obtaining but going beyond items specified in a search warrant.

2. A violation of the V Amendment to the Constitution by admitting into evidence a note secured by a search of defendant's apartment which it is claimed is self-incriminating.

3. Such prejudicial rulings and errors committed at the trial by the trial judge as cumulatively to deny defendant a right to a fair trial in violation of due process under the XIV Amendment.

■ The questions relating to adequate representation by appointed defense counsel, the allowance of further time to defendant to select counsel of his choice, the denial of a continuance in order to locate witnesses on defendant's behalf, the admission into evidence of former criminal conduct and what defendant classifies as "other miscellaneous errors" involve discretionary rulings by the trial judge, affirmed by the Minnesota Supreme Court and do not attain constitutional proportions for review by this court.

■ In passing however, the court, from reviewing the record can see no basis for the claim of inadequate representations by counsel. Defendant originally appeared by counsel of his own choosing who conducted the preliminary hearing but apparently defendant could not make satisfactory financial arrangements and thereafter he was permitted to withdraw. The court appointed a member of the county public defender's office, a lawyer of stature and experience and whom the court would judge from reading the record made every objection and motion available to him considering he had a very sketchy defense at best. The trial judge commented to defendant personally in ·chambers "Mr. Todd [defendant's appointed coun-

sel] has done a marvelous job. He's really sweat blood in your behalf in this case, from my observation Mr. Taylor . . . ." This court makes the same observation from the record. It is perfectly obvious that to have made a technical motion for mistrial would have accomplished nothing more than counsel's timely and well put objections, and its chances of being granted nil. The witnesses whom defendant did produce and who were called were of little assistance to the defendant and in no real sense established any alibi. Counsel's personality may not have been wholly pleasing to defendant, but such is not grounds for asserting inadequate representation. As the Minnesota Supreme Court has stated in State v. Fagerstrom, 286 Minn. 295, 176 N.W.2d 261 (1970):

> "However, the right of an indigent to have counsel does not give him the unbridled right to be represented by counsel of his own choosing. The court is obligated to furnish an indigent with a capable attorney, but he must accept the court's appointee. Although he may ask for substitution, his request will be granted only if exceptional circumstances exist and the demand seems reasonable."

There are many federal cases to the same general effect.

On appeal to the Minnesota Supreme Court defendant was represented by the Minnesota State Public Defender's office, which office submitted two volumes of an exhaustive and well written brief raising, it would seem to this court, every possible grounds for reversal. This office has a state-wide reputation and is manned by very able attorneys.

■ As to defendant's requested continuance made at the close of the government's case to locate witnesses, the offer of proof at best was that two or more would testify that the complaining witness was a prostitute or would bring out other facts of her background; others that she had passed bad checks. These would seem to be of doubtful value as raising a defense and quere wheth-

er their testimony even would have been admissible. The sheriff returned a not found on subpoenas on a number of the apparent nomadic witnesses and the trial court's refusal to continue the case in the middle of the trial for two or three alleged alibi witnesses was properly in his discretion. Defendant called three witnesses to the stand, none of whom were of any real value in establishing an alibi. One of defendant's allegations is that an investigator was able earlier to locate and interview the missing witnesses but that upon issuance of subpoenas, the sheriff returned most of them unserved and marked "not found". It is clear from the record that there were times during the 24 hour period of the prosecuting witness' ordeal when either defendant or his wife "Little Mama", but not both, were absent from the apartment where she was being held and threatened with a gun by both. The sketchy offer to prove by three witnesses who could not be found that between the hours of 11:30 and 1:00 A.M. on August 5th and 6th defendant was elsewhere, or that in the late evening hours of August 5th "Little Mama" was at a certain bar would hardly establish an alibi for a 24 hour period. The trial court's discretion was it would seem to this court properly exercised in any event.

■ Defendant's claim of error for admission of evidence of prior criminal conduct is without any basis. Such conduct was proximate, having occurred two or three days prior to the present events, was of the same type, involved alleged rape of one Cassandra Carlstrom, and was properly admissible as showing a course of conduct. The trial court at least twice advised the jury of the purpose of receiving the evidence and that it was not to be considered on the question of whether defendant committed the crimes charged in the information for which he was on trial.

Other miscellaneous errors assigned have no merits. The court having made an independent examination of the record cannot find that the conduct of defendant's trial was unfair or denied him due process of law and thus finds no violation of XIV Amendment due process rights.

■ On the aspect of the search and seizure as claimed to violate the IV Amendment, no serious challenge can be directed toward the existence of probable cause for the issuance of a search warrant. The principal argument made is that whereas the search warrant specified a number of items (see listing in the Minnesota Supreme Court opinion) the particular note here involved received in evidence as Exhibit "C" and set out in full in the State's response to this court's order to show cause was not listed on the search warrant. It was found in defendant's apartment during the search on a closet shelf. The Supreme Court said of it:

"In substance, this memorandum instructed defendant's wife on how to prepare and condition a young woman for service as a member of their stable of prostitutes."

It directed that fellatio be practiced on the young woman and that later pictures of her practicing sodomy be taken to "wrap her up". She testified that both of these things were forced on her and that pictures were taken nude of defendant and herself ostensibly having intercourse and later engaging in an act of sodomy.

■ It is this court's view that the note was thus definitely connected with and related to the criminal conduct on the basis of which the search warrant was issued. The note was not obtained as the result of a general rummaging search resulting in finding "mere evidence" but was a document instructive of the procedures to which the complaining witness herself had been subjected. Even could it be said that the Minnesota Supreme Court disregarded or inappropriately distinguished its prior case of State v. Pietraszewski, 285 Minn. 212, 172 N.W.2d 758 (1969), or other cases, such is that court's business and prerogative and of no concern to

this court unless under federal standards what occurred encroached IV Amendment rights. An examination of the federal decisions clearly establishes that given a lawful search, things may be seized if they relate to the criminal behavior in question, even though the specific items are not described in the warrant particularly when as in this case the warrant included "other material related to this crime of kidnapping, aggravated assault, sodomy, abduction . . . ." Warden v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967), distinguishing, or by many regarded as overruling the "mere evidence" doctrine of Gouled v. United States, 255 U.S. 298, 41 S.Ct. 261, 65 L. Ed. 647 (1921). Here the note or memorandum was in reality an instruction sheet, which was followed, and thus an instrumentality of the crime. Defense counsel's reliance on Abel v. United States, 362 U.S. 217, 80 S.Ct. 683, 4 L. Ed.2d 668 (1960), where in fact the seizure was upheld and *Gouled supra* seems misplaced, but this court need not rationalize for in any event the note here was an instrumentality and not "mere evidence" and *Warden supra* seems clearly to have settled that problem in any event stating:

"Nothing in the language of the Fourth Amendment supports the distinction between 'mere evidence' and instrumentalities, fruits of crime, or contraband. On its face, the provision assures the 'right of the people to be secure in their persons, houses, papers, and effects . . . ,' without regard to the use to which any of these things are applied. This 'right of the people' is certainly unrelated to the 'mere evidence' limitation. Privacy is disturbed no more by a search directed to a purely evidentiary object than it is by a search directed to an instrumentality, fruit, or contraband. A magistrate can intervene in both situations, and the requirements or probable cause and specificity can be preserved intact. Moreover, nothing in the nature of property seized as evidence renders it more private than property seized, for example, as an instrumentality; quite the opposite may be true. Indeed, the distinction is wholly irrational, since, depending on the circumstances, the same 'papers and effects' may be 'mere evidence' in one case and 'instrumentality' in another. See Comment, 20 U.Chi.L.Rev. 319, 320–22 (1953)."

Defendant claims a violation of the V Amendment to the United States Constitution in that by the use of the note (Exhibit C) defendant was required to be a witness against himself and thus was self incriminated. Defendant in his brief to the Supreme Court cited and relied on United States v. Olmstead, 7 F.2d 760 (D.C.Wash. 1925), which holds that certain papers seized though not mentioned in a search warrant had V Amendment protection. The court there pointed out, however "In the instant case the papers, etc., seized, were not the means of committing a felony . . . or designed in themselves to violate any penal law . . . ." Otherwise here. The note was a definite instruction to defendant's wife as to the steps she was to take and, as to the procedure she was to follow in committing crimes on the person of a young woman. This note was not a diary reciting what had been done by defendant or an acknowledgment or confession written to someone, else of a crime committed. It was a direction to commit one or more crimes *in futuro* and as such is as much an instrumentality of the crime as any other tangible piece of property seized.

The grandfather case on this subject is language found in Boyd v. United States, 116 U.S. 616 at 623–24, 6 S.Ct. 524, 29 L.Ed. 746 (1886). This court is of the view that there is a distinction between self-incrimination and incrimination itself. A party may be privileged from requiring production of evidence, by himself, but is not immune from its production by other means. The Second Circuit Court of Appeals in United States v. Bennett, 409 F.2d 888

(2d Cir. 1969) cert. denied 396 U.S. 852, 90 S.Ct. 113, 24 L.Ed.2d 101 (1969) sub nom., rehearing denied 396 U.S. 949, 90 S.Ct. 376, 24 L.Ed.2d 256 (1969), takes the view that the dicta in *Boyd supra* is now largely repudiated by Warden v. Hayden, *supra,* and that "the Fourth Amendment does not protect broadly against the seizure of things whose compulsory production would be forbidden by the Fifth [Amendment]". The problem is well presented and thoroughly discussed by Judge Friendly at p. 896–7; see however, Hill v. Philpott, 445 F.2d 144 (7th Cir. 1971). This court agrees that the language in the *Bennett* case is applicable and controlling in the case at bar and that defendant's V Amendment privilege was not violated by the introduction into evidence at trial of Exhibit C; particularly since here it was an instrumentality of the crime and of the criminal conduct and behavior.

A separate order denying the petition for a writ of habeas corpus has been entered.