STATE of Minnesota, Respondent,

v.

Michael J. PULKRABEK, Appellant.

No. 48125.

Supreme Court of Minnesota.

June 2, 1978.

C. Paul Jones, Public Defender, Mollie Raskind, Asst. Public Defender, Minneapolis, for appellant.

Warren Spannaus, Atty. Gen., St. Paul, Dennis Moriarty, County Atty., Shakopee, for respondent.

PER CURIAM.

Defendant was found guilty by a six-person county court jury of a misdemeanor charge of receiving or concealing stolen property believing it to be stolen, Minn.St. 609.53, subd. 2,[1] and was sentenced by the trial court to 10 days in jail, with 5 days suspended and the remaining 5 days to be served on weekends under the Huber Law. The issues raised by defendant on this appeal from an order of the district court denying postconviction relief relate to alleged misconduct by the prosecutor in the manner in which he attempted to impeach

---

1. Under Minn.St. 609.53, subd. 1, one who receives or conceals stolen property *knowing* it is stolen may be sentenced to 10 years in prison if the property is valued at $100 or more, whereas under subd. 2 one who receives the property *believing* it to be stolen is guilty only of a misdemeanor regardless of the value of the property.

defendant on cross-examination and in his closing argument.[2]  In denying postconviction relief the district court ruled (1) that defendant waived the issues both by failing to object at trial and by failing to raise them in his direct appeal to district court, and (2) that, in any event, even if there was error, defendant did not suffer prejudice. Although the prosecutor committed error both in cross-examination and in closing argument, we are not inclined to reverse on these grounds in this case because the errors were neither material nor prejudicial. Thus, we affirm.

Early on the morning of Saturday, December 14, 1974, someone broke into the office of Donald Nold, a New Prague attorney, and took two large electric office typewriters, a calculator, and an adding machine.

On December 15, a young woman named Carol Freitag turned the stolen goods over to the New Prague Police Department. After interviewing her, the deputy sheriff who was investigating the burglary put out a pickup order for defendant and Allen Pecholt, who was then Freitag's fiance. Pecholt, who was arrested and questioned later that day, gave a written statement to the police. Defendant, who was arrested on December 16, also gave a voluntary statement.  Thereafter, Pecholt was charged with burglary and defendant was charged with misdemeanor receiving and concealing stolen property.

At defendant's trial the main evidence introduced by the state during its case-in-chief was the written statement which defendant gave on December 16.  Both Pecholt, who had already pleaded guilty, and defendant testified for the defense.

From the evidence it appears that Pecholt, defendant, and a third person, Scott Sheperd, spent the evening of December 13 drinking together at a bar in New Prague. At about 1 a. m. on December 14 defendant and Sheperd drove Pecholt to his mother's New Prague home and, after dropping him off, continued on to nearby Jordan, where defendant had a room in a hotel.  The two talked and drank until shortly after 5 a. m., when they fell asleep.

Pecholt admitted at trial that sometime after being dropped off by defendant and Sheperd, he broke into the law office which was right across the street from his mother's house and took the equipment.  Pecholt testified that he put all the stolen items in his sister's automobile and then got his sister to drive him to Jordan.  He testified that he went to defendant's room, woke him up, and persuaded him to drive him to the Richfield apartment he shared with Freitag.  Pecholt testified that defendant did not help to transfer the goods to his car but that defendant saw the goods and asked if they were stolen.  Pecholt testified that he told defendant they were not stolen.

Defendant, who was enrolled as a first-year student at the University of Minnesota at the time of trial, testified that Pecholt woke him up at about 5:30 a. m. and asked for the ride, saying that he had to take some stuff to Richfield and pick up some clothes there.  Defendant testified that he "couldn't figure out why he needed a ride so fast  *  *  *."  He testified that he told Pecholt he did not have any gas, but that Pecholt offered to put gas in his car and a quart of oil and so he agreed to give him a ride as a "friendly favor."  He testified that when he got outside he was surprised to find that Pecholt's sister's car was not there and that they had to drive off the main street to find her car and to transfer the goods.  He testified that before loading the items he removed a Christmas tree from

2.  Defendant first appealed the judgment of conviction to the district court pursuant to Minn.St. 487.39, raising issues relating to the constitutionality of § 609.53, subd. 2, and the sufficiency of the evidence.  After a three-judge panel affirmed defendant's conviction, defendant appealed to this court without first seeking leave to appeal, as required by § 487.-39.  This court, at special term, granted the state's motion to dismiss the appeal for failure to seek leave to appeal, but remanded the matter to the district court so that defendant could seek postconviction relief on the grounds mentioned in the brief.  The issues raised in this postconviction proceeding (as on defendant's original attempted appeal to this court) are not the same issues raised by defendant on his appeal from county court to district court.

his backseat. Explaining this, he testified that "I threw the tree out in the ditch by the side of the road because it was sticking out the windows and stuff and I figured if I drove down 35W I could get stopped, you know." He testified that Pecholt then put the items in the car, and he admitted that he "assumed" the items were stolen. Explaining this, he testified that "I couldn't believe what I saw" and that "not most people can come up with two thousand dollars worth of typewriters out of the blue." He testified that because of this, he asked Pecholt if he had burglarized a place. He testified that even though he knew Pecholt had a prior burglary conviction, he did not question Pecholt further when he denied any wrongdoing. According to defendant, "I couldn't believe it, but I asked him and he said, no." Defendant testified that he did not pursue the matter further because Pecholt was a "good friend of mine" who had "never lied to me before" and, further, "I didn't care one way or another, I didn't figure it was my business." He also testified that for all he knew Pecholt had made a good deal because "some people do make good deals" and "Pecholt is known for making good deals." Asked by the prosecution if Pecholt had mentioned any deal during the evening of drinking together, defendant replied no. Defendant testified that after the goods were in the car he then drove Pecholt on to Richfield. He testified that it was in Richfield in the apartment that he first learned for sure that the items were stolen, because he heard them make calls to people in which they discussed selling the items.

1. The allegation that the prosecutor improperly and prejudicially cross-examined defendant relates to the following exchange:

"Q Have you ever been arrested or convicted of a theft prior to this incident?

"A No. I don't have a record.

"MR. LABORE: May we approach the bench?

"THE COURT: You may.

"REPORTER'S NOTE: Discussion had off record.

"THE COURT: You may proceed.

"MR. LABORE: That's all."

It is clear that this question was improper. This court has stated on a number of occasions that only convictions, not arrests or accusations, may be used to impeach a defendant's credibility. *State v. Michaelson*, 298 Minn. 524, 214 N.W.2d 356 (1973). Further, as this court made clear in *State v. Williams*, 297 Minn. 76, 210 N.W.2d 21 (1973), a prosecutor should inquire about specific prior crimes only when he can produce evidence, such as a certified copy of the judgment of conviction, to rebut the denial.

Even a "fishing expedition" such as this one, where the prosecutor apparently did not have any idea one way or the other whether defendant had any prior convictions, is highly improper. This is particularly true where the conference at the bench may have suggested to the jury that defendant did have prior convictions which were being held inadmissible. We find the question to be error, error which might well require reversal in a close case, but we do not find such prejudice in this case. The evidence, including defendant's testimony that he "assumed" the items were stolen, provides a sufficient basis for the misdemeanor conviction. We note also that no objection to the question was raised by defense counsel.

We emphasize again, however, that prosecutors must take precautions so that errors of this kind do not occur. Under the new Rules of Evidence the proper procedure in all cases would be to have a hearing outside the presence of the jury, and preferably before trial, on the matter of which convictions will be usable to attack credibility. See, Rules 103(c) and 609, Rules of Evidence; 3 Weinstein & Berger, Weinstein's Evidence, pp. 609–79 to 609–80.3. See, also, *State v. Smith*, 261 N.W.2d 349 (Minn.1977). If that procedure is followed, we will not have problems like those presented in *Michaelson* or *Williams* or like that presented here.

2. The allegation that the prosecutor committed prejudicial misconduct in his closing argument relates to certain expressions of personal opinion made by the prosecutor. These statements; while erroneous, do not by themselves mandate reversal in this case. However, we again caution counsel about the potential of such statements for prejudice.

Affirmed.