## ·STATE v. MUELLER TAYLOR.

187 N. W. (2d) 129.

May 14, 1971—No. 42105.

*C. Paul Jones,* State Public Defender, and *C. Thomas MacIntosh II,* Assistant State Public Defender, for appellant.

*Warren Spannaus,* Attorney General, *George M. Scott,* County Attorney, and *Henry W. McCarr, Jr.,* and *David G. Roston,* Assistant County Attorneys, for respondent.

Heard before Knutson, C. J., and Murphy, Otis, Kelly, and Odden, JJ.

Per Curiam.

Appeal from a judgment finding defendant, Mueller Taylor, also known as Robert Taylor, guilty of kidnapping, aggravated assault, aggravated rape, indecent liberties, aggravated robbery, prostitution, and coercion. Although there was not much substance to the defense presented, it is apparent that the defense counsel made the most of what he had to work with. Numerous errors are alleged including the admission of evidence seized by an alleged unlawful search and seizure, as well as abuse of the court's discretion in permitting evidence of other crimes.

The record fairly establishes that defendant and his wife, "Little Mama," were engaged in the business of prostitution and that they kidnapped the complainant from a telephone booth in the city of Minneapolis to impress her into their service. At the time she was a 22-year-old divorcee, the mother of two infant children, who had recently come to Minneapolis from a rural area. She was taken to an apartment maintained by defendant and his wife. There she was forcibly restrained, threatened at gunpoint, physically beaten, subjected to sexual abuse, degraded in various ways, and warned that if she failed to cooperate, she would be a "dead girl." She was forced to pose in the nude in lewd, perverted, and indecent postures ˙while photographs were taken. She was told that the photographs would be used to discredit or prosecute

her if she did not cooperate with defendant and his wife. After certain conditioning for a career of prostitution, she was taken to the street and, under the constant surveillance of defendant's wife, she was forced to engage in at least one act of prostitution. It is unnecessary to recite all of the abuse and humiliation to which she was subjected. It is sufficient to say that she escaped from her captors the following day and reported the offense to the police.

A search warrant was then secured for defendant's apartment, which authorized the seizure of the following items:

"1 set of wedding bands, gold with white gold trim, belonging to [complainant] (rings soldered together); 1 pair of blue shorts, boys, cut-offs, with zipper in front; 1 white blouse, womens, button down front, short sleeves; 1 pair of womens white panties; 1 white pillow case with blood from victim on it; 1 bedsheet with semen from suspect on it; 1 small caliber revolver described as cylinder type, silver with black handle; 3 pictures of [complainant] in various states of sex acts (oral sodomy, etc.); 1 white envelope legal size with address of [complainant]; 1 social security card, name [of complainant]; with number 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; and other materials related to this crime of kidnapping, aggravated assault, sodomy, abduction."

The inventory of items taken following the search included:
"1 pr white cotton panties
2 white bathtowels
1 white bedsheet
1 letter on 8½x11 paper
1 Swinger Polaroid Land Camera Mod 20
1 6 shot 22 cal pistol, blk with wht pearl handle ser 121882
6 22 cal short bullets, Super X brand cont within gun cylinder
1 box of Western Super X 22 cal short bullets, approx ¾ full
1 blue 40 watt GE light bulb
1 spent 22 cal cartridge"

One of the items seized, which was not described in the search warrant, was a memorandum addressed to "Mom" and signed "daddy," which the prosecution contended contained evidence which would lead one to believe that the crimes charged were committed as reported by the complainant. In substance, this memorandum instructed defendant's wife on how to prepare and condition a young woman for service as a member of their stable of prostitutes. This letter or memorandum was received in evidence over objection.

It is contended that the seizure and use of the letter or memorandum in question violated defendant's rights under the Fourth and Fifth

Amendments of the United States Constitution. It is contended that it was not described in the search warrant, was a private paper, and not within the permissible scope of the search authorized. We are of the view that the contents of the letter or memorandum found in defendant's apartment, among other items described in the search warrant, were clearly and definitely related to the criminal behavior which prompted the issuance of the search warrant, making the seizure of the letter reasonable. The document in substance outlined the manner of conditioning or preparation for a career of prostitution, a procedure to which the complainant had herself been subjected. We are satisfied that the foregoing conclusion is supported by language contained in State v. Bagley, 286 Minn. 180, 175 N. W. (2d) 448; State v. Shore, 289 Minn. 302, 183 N. W. (2d) 776; State v. Pietraszewski, 285 Minn. 212, 172 N. W. (2d) 758; Warden v. Hayden, 387 U. S. 294, 87 S. Ct. 1642, 18 L. ed. (2d) 782; Gurleski v. United States (5 Cir.) 405 F. (2d) 253; Harris v. United States, 331 U. S. 145, 67 S. Ct. 1098, 91 L. ed. 1399; Louie v. United States (9 Cir.) 426 F. (2d) 1398; Crawford v. State, 9 Md. App. 624, 267 A. (2d) 317.

During the course of the trial, another girl, 18 years of age, was called as a prosecution witness. Defendant's objection to her testimony being overruled, she testified that shortly prior to the offense charged, defendant had lured her to his apartment on the pretext that one of her friends was there. Once inside the apartment, defendant held a gun to her head, ordered her to undress, and raped her. She became pregnant and subsequently underwent an abortion. She was examined by Dr. James Robb at Hennepin County General Hospital. She told Dr. Robb of the assault, and he also was a witness. The trial court instructed the jury that this evidence was received only for the purpose of showing a common scheme or plan, method of operation, motive or criminal intent and not for the purpose of proving defendant's guilt in the particular case.

Defendant claims that it was prejudicial error to permit this evidence which related to another crime. We cannot agree that there was error in permitting this testimony. While it is true that evidence connecting the defendant with other crimes generally is not admissible, principally because it has a tendency to justify to the jury a finding of guilt irrespective of the charge on which he is being tried, it is nevertheless well established that evidence of a separate crime may be admitted if it has a reasonably close relation in scheme and pattern and in time to the act charged. The determination of whether the independent criminal acts are so closely related to the crime charged as to be admissible is a matter resting largely within the discretion of the trial court, and this

court will not reverse the lower court's ruling unless there is a clear abuse of discretion. State v. Klotter, 274 Minn. 58, 142 N. W. (2d) 568; State v. DePauw, 246 Minn. 91, 74 N. W. (2d) 297.

The other points raised by defendant are, in the context of the record, so completely devoid of merit that they do not require discussion.

Affirmed.