STATE v. MICHAEL DENNIS MICHAELSON.

214 N. W. 2d 356.

December 14, 1973—No. 43910.

*John Patrick Mazzitelli,* for appellant.

*Warren Spannaus,* Attorney General, *Gary W. Flakne,* County Attorney, and *Theodore R. Rix, Vernon E. Bergstrom,* and *Michael McGlennen,* Assistant County Attorneys, for respondent.

PER CURIAM.

Defendant appeals from convictions for perjury (Minn. St. 609.48), recording a forged instrument (Minn. St. 609.64), and receiving or concealing stolen property (Minn. St. 1971, § 609.53). He contends that (1) in refusing to suppress evidence which police seized in a search of his house, the trial court erred because these items were not named in the warrant; (2) the trial court erred in permitting the state to introduce evidence of another crime under the "common scheme or plan" exception to the exclusionary rule; and (3) the prosecutor committed prejudicial error in cross-examining defendant when he inquired about a prior felony charge which had been dropped after defendant pled guilty to two other offenses.

In September 1971, Minneapolis police, while investigating one Merle Gardner for an unrelated offense, discovered that Gardner's automobile, a 1971 Ford, was a stolen car and that Gardner, using the alias Gordon Johnson, had applied for and obtained a new Minnesota serial number by claiming, falsely, that he had built the automobile from new and used parts. Subsequently, police also checked on a 1971 Corvette that had been observed sometime earlier at Gardner's residence, and discovered that it was registered in defendant's name as a "reconditioned" automobile. From receipts for the parts used, which must be filed in applying for a new serial number for a "reconditioned" automobile, the police obtained the names of persons from whom defendant claimed to have purchased the parts. The police were unable to locate these people. Thereafter the police obtained a warrant to search the Corvette for a hidden serial number and to search defendant's residence for registration papers for the automobile and other relevant correspondence from the Minnesota Highway Department.

In executing the warrant to search defendant's residence, the police seized a number of papers relating to the Corvette which were not specifically mentioned in the warrant, such as repair slips from Jay Kline Chevrolet for the automobile and a receipt for the engine signed by the "Reverend Simon Black of San Pablo, California." The automobile was not found at defendant's residence. Police located it later, after learning that it had been sold to one Terrance Bryan. Pursuant to a second search warrant, the police seized the automobile from the new owner,

searched it, and found a hidden serial number which matched the serial number of the same model and color 1971 Corvette stolen from Viking Chevrolet in St. Paul in June 1971.

At his trial, evidence was introduced to show defendant had a part in forging a document used in the commission of Merle Gardner's offense. Defendant took the stand in his own behalf. Admitting at the outset that in 1967 he had been convicted for possession of marijuana and sending pornography through the mail, he insisted that he did in fact build a 1971 Corvette from new and used parts and denied that he forged any receipts or perjured himself in applying for a serial number for the automobile. Defendant contended that the automobile which police seized and searched was not the automobile which he "reconditioned" (that is, built himself), nor was it the automobile he sold. On cross-examination, the prosecutor, relying on information he had obtained from an FBI "rap sheet," asked defendant if he hadn't also been convicted of illegal transfer of firearms. Defendant denied this conviction, stating that the charge had been dismissed. The prosecutor then asked, "Were you not charged on August 14, 1967, with those violations?" Defense counsel objected on the ground that only convictions, not charges, may be used to impeach a defendant. The trial court overruled the objection and defendant admitted that there had been three charges.

1. In State v. Taylor, 290 Minn. 515, 517, 187 N. W. 2d 129, 131 (1971), this court, in affirming a conviction in which the trial court permitted evidence of another crime under the common scheme or plan exception, stated:

"* * * While it is true that evidence connecting the defendant with other crimes generally is not admissible, principally because it has a tendency to justify to the jury a finding of guilt irrespective of the charge on which he is being tried, it is nevertheless well established that evidence of a separate crime may be admitted if it has a reasonably close relation in scheme and pattern and in time to the act charged. The determination of whether the independent criminal acts are so closely related to the crime charged as to be admissible is a matter resting largely within the discretion of the trial court, and this court will not reverse the lower court's ruling unless there is a clear abuse of discretion."

We believe that the trial court in this case did not abuse its discretion in admitting evidence of defendant's participation in the Merle Gardner forgery since it had "a reasonably close relation in scheme and pattern and in time to the act charged." One of the receipts submitted by Merle

Gardner, alias Gordon Johnson, was signed by defendant; police saw defendant's automobile parked at Gardner's residence; and the wording on the application by Gardner was somewhat similar to that on the application signed by defendant.

2. The rule in Minnesota is that police executing a search warrant may seize items not described in the search warrant provided there is a strong relationship between the seized and described items. Phrased differently, it is proper if the seized items clearly and definitely relate to the behavior which prompted the issuance of the search warrant. State v. Van Wert, 294 Minn. 464, 199 N. W. 2d 514 (1972); State v. Taylor, 290 Minn. 515, 187 N. W. 2d 129 (1971); State v. Pietraszewski, 285 Minn. 212, 172 N. W. 2d 758 (1969). We believe this is such a case and that the police were therefore justified in seizing the items.

3. Under Minn. St. 595.07, a prosecutor may impeach an accused by cross-examining him concerning a prior "conviction." But an arrest or an accusation in the form of an indictment or information is not a "conviction" under the statute and is not admissible. State v. Currie, 267 Minn. 294, 126 N. W. 2d 389 (1964). Defendant may have been acquitted of the charge, or, as here, the charge may have been dismissed. Therefore, before a prosecutor asks a defendant about a prior offense, he should have good reason to believe that there was in fact a conviction. Recently, in State v. Williams, 297 Minn. 76, 210 N. W. 2d 21 (1973), we cautioned against the use of FBI "rap sheets" for impeachment purposes because they are merely investigatory tools and do not necessarily contain complete information. The procedure recommended in Williams is for the prosecutor to inquire about prior crimes only when he can produce evidence, such as a certified copy of the judgment of conviction, to rebut a denial.

Here, the prosecutor in interrogating defendant insisted he had been convicted of a firearms offense, basing his inquiry on an FBI "rap sheet" which showed defendant had been charged with that crime. It developed that the charge had been dismissed. Ordinarily the disclosure of an unprosecuted accusation might be sufficiently prejudicial to require a new trial. However, in the light of the criminal record which defendant admitted, we are of the opinion that revealing to the jury a charge which the jury knew was subsequently dismissed was not likely to have any appreciable influence on the outcome of their deliberations.

Affirmed.

Mr. Justice Scott took no part in the consideration or decision of this case.