**AMERICAN SAMOA GOVERNMENT, Plaintiff**

v.

**PUNEFU M. TUAOLO, Defendant**

High Court of American Samoa
Trial Division

CR No. 30-98

July 30, 1999

Before RICHMOND, Associate Justice, LOGOAI, Associate Judge, TAUANU'U, Acting Associate Judge.

Counsel: For Plaintiff, John W. Cassell, Assistant Attorney General
For Defendant, Tautai A. F. Faalevao, Public Defender

## ORDER DENYING DEFENDANT'S
## MOTION TO SUPPRESS EVIDENCE

On June 2, 1999, defendant Punefu M. Tuaolo ("Tuaolo") filed in this matter a motion to suppress evidence, alleging that certain evidence seized during a search of his residence was not listed among those items specifically sought in the warrant authorizing that search. Plaintiff American Samoa Government ("ASG") filed its memorandum in opposition on June 28, 1999. A hearing was held on the motion on July 12, 1999, with Tuaolo and both counsel present.

### Facts

The facts relevant to this motion appear to be undisputed. In connection with an armed robbery and shooting incident of April 30, 1998, a search warrant authorizing a search of Tuaolo's residence was obtained and executed the following day, May 1, 1998. The search warrant properly identified those items to be seized, which included a black flashlight, a backpack, a cellular phone, a handgun, a shotgun, and certain articles of clothing which had been described by one of the victims as those worn by her attacker.

In executing the warrant, police did locate several of the items listed, including the flashlight and the clothing, while others were not found. In addition, Captain Va`a Sunia ("Sunia"), a member of the police search party, noticed a roll of masking tape on top of a dresser in a bedroom and seized this item. It is this roll of masking tape which Tuaolo now seeks to suppress, on the ground that it was not identified in the search warrant

as evidence sought during the search.

## Discussion

 Mirroring its federal counterpart in the Fourth Amendment, Article 1, Section 5 of the Revised Constitution of American Samoa requires that a search warrant "particularly describ[e] . . . the persons or things to be seized." Under the well-known Rule of Exclusion, items seized illegally may be suppressed upon a timely motion. *Weeks v. United States,* 232 U.S. 383 (1914). Moreover, Article 1, Section 5 explicitly states that "[e]vidence obtained in violation of this section shall not be admitted in any court." As noted above, the masking tape was not included in the list of things to be seized, and therefore that seizure was illegal unless an exception exists to justify it. We agree with ASG that the "plain view" rule constitutes such an exception in this case.

 The "plain view" exception was adopted by this court in *ASG v. Loia,* 16 A.S.R.2d 1 (Trial Div. 1990). In that case, the court applied the framework set forth by the Supreme Court in *Coolidge v. New Hampshire,* 403 U.S. 443 (1971), under which a warrantless *seizure of private property might nevertheless be permitted when* three requirements have been met:

> First, the police officer must lawfully make an "initial intrusion" or otherwise properly be in a position from which he can view a particular area. *Id.* at 465-468. Second, the officer must discover incriminating evidence "inadvertently," which is to say, he may not "know in advance the location of [certain] evidence and intend to seize it," relying on the plain-view doctrine only as a pretext. *Id.* at 470. Finally, it must be "immediately apparent" to the police that the items they observe may be evidence of a crime, contraband, or otherwise subject to seizure. *Id.* at 466.

*ASG v. Loia,* 16 A.S.R.2d 1, 3 (quoting and citing *Coolidge*). We will briefly discuss each of these three requirements in turn.

A. Lawful Intrusion

 The lawfulness of the initial intrusion into Tuaolo's residence is not contested. The police were conducting the search pursuant to a warrant, which was supported by probable cause. Further, there was no additional "intrusion" once the search commenced: Tuaolo does not deny that the masking tape in question was found in plain view during the course of carrying out the otherwise lawful search.[1]

_____

[1] We note that if a search continues *after* all the items identified on the

## B. Inadvertent Discovery

As the *Coolidge* court envisioned it, the requirement that the evidence in question be discovered inadvertently would serve to prevent the seizure of evidence "which the police know in advance they will find in plain view and intend to seize." *Coolidge,* at 471. There is no evidence before us to suggest that Sunia's discovery of the masking tape was in any way contemplated prior to the execution of the warrant. Because we find that the seizure in this case does satisfy the "inadvertent discovery" requirement of *Loia* and *Coolidge,* we need not reach in this case the issue of whether this prong of the plain view test should be abandoned in this jurisdiction, as the Supreme Court did in *Horton v. California,* 496 U.S. 128 (1990).

## C. Incriminating Nature of Evidence "Immediately Apparent"

Although several tests have been put forward by courts in evaluating whether this final requirement has been met, the inquiry essentially boils down to the existence of probable cause. *Texas v. Brown,* 460 U.S. 730, 742 (1983). Probable cause is a "flexible, common-sense standard," and merely requires that a police officer reasonably believe that certain items "may be contraband or stolen property or useful as evidence of a crime; it does not demand any showing that such a belief be correct or more likely true than false." *Id.*

As the head of ASG's criminal investigation unit, Sunia was generally aware of the progress of the investigation prior to the search of Tuaolo's house. The seized roll of masking tape was located in a room identified by Tuaolo's wife as Tuaolo's bedroom. Sunia knew that masking tape was used to bind one victim, who had identified Tuaolo as the person who bound her. He also knew that a second victim was bound with masking tape contemporaneously. One roll was found at the crime scene, and Sunia reasoned that separate rolls may have been used. Furthermore, from his law enforcement training, Sunia was aware that modern police laboratories are capable of drawing valuable evidentiary conclusions from such tape, including possibly matching the seized roll to any segments found at the scene of the crime.[2] Considering the

---

warrant had been found, then the further search activity may constitute an unlawful intrusion and thereby render the plain view exception inapplicable. In this case, however, several of the listed items were never located, so there is no issue regarding the order in which the various pieces of evidence were found.

[2] In his motion, Tuaolo observes that "[i]t is general knowledge that almost every family in American Samoa has a masking tape [sic] for taping fine mats and other items." Motion to Suppress, at ¶ 3. This argument misses the point. The requirement that the, evidence be

circumstances as a whole, we believe that Sunia had probable cause to seize the roll of masking tape from Tuaolo's residence.

### Conclusion and Order

For the foregoing reasons, we conclude that the seizure of the masking tape in this case was proper under the plain view doctrine. Tuaolo's motion to suppress evidence is therefore denied.

It is so ordered.

<hr>

incriminating does not mean it must be *inherently* incriminating (e.g., guns, drugs, contraband), but. rather, as one court put it, that it "clearly and definitely relate to. the behavior which prompted the issuance of the search warrant." *State v. Michaelson,* 214 N.W.2d 356, 359 (Minn. 1973). As in the instant case, even an otherwise common and innocuous item such as a roll of masking tape may, under certain circumstances, serve as incriminating evidence and would therefore be appropriate for seizure.