# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 99-2940

———————

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Missouri. |
| Gerald R. Carroll, | * | |
| | * | |
| Appellant. | * | |

———————

Submitted: January 11, 2000
Filed: March 15, 2000

———————

Before BOWMAN and LOKEN, Circuit Judges, and ALSOP,[1] District Judge.

———————

BOWMAN, Circuit Judge.

Gerald Carroll was convicted by a jury of armed robbery of a federally insured credit union and a related firearms charge, and was sentenced by the District Court to life in prison plus twenty years. He appeals on three grounds. Carroll argues that evidence of a prior conviction was improperly admitted, that certain post-arrest statements were wrongly introduced into evidence, and that the law requiring his lengthy sentence is unconstitutional. The latter two contentions are meritless. While

———————

[1]The Honorable DONALD D. ALSOP, United States District Judge for the District of Minnesota, sitting by designation.

Carroll's prior conviction was erroneously admitted, that error was harmless, and we accordingly affirm his conviction and sentence.

## I.

Carroll has been convicted of armed robbery previously. In 1988, he robbed a bank using a firearm. He pleaded guilty in 1989 and was sentenced to a substantial prison term. He entered supervised release on September 6, 1996. On July 30, 1998, Carroll and an accomplice, Kevin Carroll, robbed the St. Louis Community Credit Union, the crime at issue in this appeal. During Gerald Carroll's trial, the United States sought to introduce evidence of his prior conviction under Federal Rule of Evidence 404(b), which prohibits the admission of evidence of "other crimes, wrongs, or acts . . . to prove the character of a person in order to show action in conformity therewith." But such evidence is admissible "for other purposes," including "plan, knowledge, [or] identity." Id. Like all other evidence, evidence admissible under Rule 404(b) is still subject to analysis under Rule 403, which allows admission unless the evidence's unfair prejudice substantially outweighs its probative value. See United States v. LeCompte, 99 F.3d 274, 277 (8th Cir. 1996). Over objection, the District Court determined that the evidence of Carroll's prior conviction was "admissible for purposes of showing a plan or pattern . . . a melding basically of that, plus identity." 1 Trial Tr. at 4. The District Court instructed the jury that it could use the Rule 404(b) evidence "to help [it] decide whether the similarity between the acts previously committed and the ones charged in this case suggest that the same person committed all of them." 3-B Trial Tr. at 9. We review for abuse of discretion. See LeCompte, 99 F.3d at 277.

The case law discusses two circumstances in which prior bad acts can be used to show a "plan or pattern." In some circumstances, a defendant's prior bad acts are part of a broader plan or scheme relevant to the charged offense. "For example, when a criminal steals a car to use it in a robbery, the automobile theft can be proved in a prosecution for the robbery." 1 McCormick on Evidence § 190, at 660-61 (John W.

Strong ed., 5th ed. 1999). If the evidence merely shows the full context of the charged crime, it is "intrinsic evidence" not governed by Rule 404(b). See United States v. Rolett, 151 F.3d 787, 790 (8th Cir. 1998). Evidence of past acts may also be admitted under Rule 404(b) as direct proof of a charged crime that includes a plan or scheme element, or evidence might serve both intrinsic and direct-proof purposes. See id. at 790-91. In other circumstances, where the "pattern and characteristics of the crimes [are] so unusual and distinctive as to be like a signature," 1 McCormick on Evidence § 190, at 663, evidence of a defendant's prior crimes is admissible to prove that it was indeed the defendant that committed the charged crime. In these cases, the evidence goes to identity. See, e.g., United States v. McQuiston, 998 F.2d 627, 629 (8th Cir. 1993). These "plan" and "identity" uses of Rule 404(b) evidence are distinct from each other and from use of prior acts to show knowledge and intent. In drug distribution cases, for example, knowledge and intent are often contested facts proven in part through prior bad acts. See United States v. Drew, 894 F.2d 965, 970 (8th Cir. 1990).

We reject the theory that Carroll's ten-year-old conviction was admissible as part of a broad criminal undertaking including both the prior offense and the charged offense. "The victims were different, and the events were far apart in time. Absent more specific linkage, such evidence is relevant to 'plan' or 'preparation' only insofar as it tends to prove a propensity to commit crimes, which Rule 404(b) prohibits." LeCompte, 99 F.3d at 278. The fact that Carroll was incarcerated in the interim period only reinforces the conclusion that the events are not part of the same criminal undertaking. Cf. U.S. Sentencing Guidelines Manual § 4A1.2 commentary (n.1) (1998) (requiring sentencing courts to treat crimes as unrelated when separated by intervening arrest).

The District Court's jury instruction demonstrates that the evidence was admitted to show identity. If the conduct underlying Carroll's prior conviction and his current charged offense both involved a unique set of "signature facts," then his prior conviction would be admissible to show that the same person committed both crimes.

See LeCompte, 99 F.3d at 278; Drew, 894 F.2d at 970. But unless the robberies are "sufficiently idiosyncratic" to make them "clearly distinctive from the thousands of other bank robberies committed each year," evidence of the prior crime is "nothing more than the character evidence that Rule 404(b) prohibits." United States v. Smith, 103 F.3d 600, 603 (7th Cir. 1996); accord LeCompte, 99 F.3d at 279 (determining that prior crimes "reflect[ed] misconduct common to all too many child sex offenders" and therefore evidence of past crimes was inadmissible); 2 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 404.22[5][c], at 404-119 (Joseph M. McLaughlin ed., 2nd ed. 1999) (noting that where alleged *modus operandi* is really just "garden variety criminal act" any inference of identification would be based on "forbidden inference of propensity").

In sum, in order to admit Rule 404(b) identity evidence on the signature facts or *modus operandi* theory, the District Court must make a threshold determination that, based solely on the evidence comparing the past acts and the charged offense, a reasonable juror could conclude that the same person committed both crimes.[2] Two factors are relevant in analyzing the question. The first is the distinctiveness of the facts that make the crimes unique and the second is the proximity of the crimes in space and time. See LeCompte, 99 F.3d at 278-29; see also, e.g., United States v. Guerrero, 169 F.3d 933, 939 (5th Cir. 1999); United States v. Robinson, 161 F.3d 463, 467 (7th Cir. 1998), cert. denied, 119 S. Ct. 1482 (1999). After reviewing the evidence in this

---

[2]The flexible test governing Rule 404(b) evidence provides that evidence of prior acts or crimes is admissible if (1) it is relevant to a material issue, (2) the prior acts or crimes are similar in kind and reasonably close in time to the crime charged, (3) the evidence is sufficient to support a jury finding that the defendant committed the extrinsic acts or crimes, and (4) the potential prejudice of the evidence does not substantially outweigh its probative value. See, e.g., United States v. Turner, 104 F.3d 217, 222 (8th Cir. 1997). The threshold determination referenced in the text is merely a distillation of the first two parts of the general test, as applied in the specific context of a *modus operandi*/identity case.

case, we believe that the prior bank robbery and the credit union robbery charged here are too generic and remote from one another to permit a reasonable inference of identity.

First, the characteristics shared by the two robberies are too common to form a *modus operandi* that uniquely identifies Carroll as the perpetrator. All the United States can argue is that, in both crimes, the perpetrator wore a nylon stocking mask, carried a gun, and vaulted over the counter to put the bank's money in a bag.

We must initially determine the frame of reference against which to measure the uniqueness of the crimes. As the question of how often a particular crime is committed in a particular way is ultimately factual, it might be appropriate, in some cases, for the District Court to take evidence on the matter in, for example, deciding a motion in limine. In other cases, the *modus operandi* or other characteristics of the prior crime and the crime currently charged may be so distinctive as to self-evidently permit a reasonable inference of identity between the perpetrator of the first and the perpetrator of the second. In the present case, we simply use a set of data readily before us. Based merely on the descriptions of bank robberies available in the published federal appellate reporters, which are incomplete in detail and refer only to a subset of all bank robberies committed, it is amply clear that the signature facts relied upon by the government in this case occur frequently, even in combination. See, e.g., McLaughlin v. United States, 476 U.S. 16, 16 (1986) (bank robber in stocking mask with gun and bag vaulted over counter); United States v. Luna, 21 F.3d 874, 875-76 (9th Cir. 1994) (same); United States v. Thornbrugh, 962 F.2d 1438, 1440 (10th Cir. 1992) (same) (irrelevant subsequent history omitted); United States v. Donahue, 948 F.2d 438, 440 (8th Cir. 1991) (same), cert. denied, 503 U.S. 976 (1992); United States v. Maguire, 918 F.2d 254, 256 (1st Cir.1990) (same). The bank robbery cases finding signature facts have reported much less common features, such as distinguishing costumes or equipment, see, e.g., Robinson, 161 F.3d at 468 (orange ski mask and "distinctive" duffel bag), unusual methods, see, e.g., United States v. Moore, 115 F.3d 1348, 1355 (7th Cir.

1997) (robbers entered bank thirty to sixty minutes before robbery and politely asked for a job application or directions), or distinctive use of a weapon, see, e.g., Smith, 103 F.3d at 603 (robbers brandished knives and held them vertically during robbery).

Further, examination of the closeness of the robberies, geographically and in time, supports the conclusion that the crimes are not sufficiently related to allow an inference of identity. The two financial institutions here, while not in the same neighborhood, are both in the St. Louis area, relatively close to each other. But the crimes occurred ten years apart. This is not a case, as in Robinson, 161 F.3d at 468 (ten days apart), Smith, 103 F.3d at 603 (one month apart), or Moore, 115 F.3d at 1355 ("a few months" apart), where it could be inferred from the temporal and geographic proximity of the two robberies, along with other facts, that the same individuals committed them both. The government, citing United States v. Alaniz, 148 F.3d 929 (8th Cir.), cert. denied, 119 S. Ct. 604 (1998), asserts that the intervening period is irrelevant because Carroll was incarcerated for most of that time. Alaniz dealt with the use of prior drug crimes to show the defendant's mental state with respect to a new drug conspiracy, a much different use from the signature-facts identity theory advanced in this case. Perhaps Carroll's incarceration undercuts the significance of the ten-year delay to some extent, but certainly not enough to permit an inference of identity.

Based on the generic nature of the crimes and on the ten years that passed between them, we conclude that the prior conviction was not relevant to prove identity through *modus operandi* because no substantial inference of identity reasonably could be made. Our criminal justice system has long forbidden juries from convicting an individual, not for facts which prove the charged offense, but for prior acts that, at best, show a criminal propensity. It was therefore an abuse of discretion to admit evidence of the prior bank robbery committed by Carroll, for that robbery is not relevant to any question other than Carroll's propensity to rob banks. See LeCompte, 99 F.3d at 279; United States v. Mothershed, 859 F.2d 585, 590 (8th Cir. 1988).

A new trial, however, is not required if the District Court's erroneous admission of evidence was harmless. See Fed. R. Crim. P. 52(a). An evidentiary error, such as this one, is harmless if, after reviewing the entire record, we determine that the substantial rights of the defendant were unaffected, and that the error did not influence or had only a slight influence on the verdict. See United States v. Flores, 73 F.3d 826, 832 (8th Cir.), cert. denied, 518 U.S. 1027 (1996). We determine the prejudicial effect of the improper evidence by examining its impact in the context of the government's case against the defendant. See id.

A witness saw the two bank robbers leave the credit union and drive off in a Honda automobile. The witness, an off-duty firefighter, immediately called police dispatch and gave a description as he watched the Honda drive away. Police Officer Coleman was parked nearby in his patrol car. Shortly after hearing the description on his radio, Coleman saw a tan Honda, occupied by two black males, stopped at a traffic signal. The car and its occupants matched the radio description. After Coleman pulled behind the getaway car, a high-speed chase ensued. Eventually, the Honda crashed into a telephone pole and its two occupants fled on foot. One suspect got away, but Officer Coleman and another police officer, Sisco, gave chase to the other. After a running shoot-out, in which no one was injured, the officers lost track of the suspect for approximately seven minutes. Sisco and other police officers found Carroll hiding behind a dishwasher next to the back of a home down the alley from the robber's last known location. When the police attempted to arrest Carroll, he resisted with fisticuffs. He was eventually subdued.

Carroll's defense at trial was mistaken identity. Carroll elicited testimony that he told a police officer after his arrest that he was dealing crack in the neighborhood and hid when he heard sirens. He points to two pieces of evidence in his favor. First, his mother testified at trial that he is right-handed, while the police testified that the robber shot at them with his left hand. Second, when Carroll was arrested, his clothes evidenced no dye stains. The robbers took bank money containing dye markers, which

explode to cover the money with dye upon leaving the bank. Evidently, Carroll means to argue that the dye would have reached Carroll's clothes had he been in possession of the money, although there was no testimony on that point at trial, and the evidence showed that the bank money was in a bag.

Had there been no evidence at trial other than Carroll's hidden location, so close to where the robber was last seen, perhaps he could argue that he was simply "in the wrong place at the wrong time." But there were two types of damning additional evidence against Carroll at trial. First, both Officer Coleman and Officer Sisco identified Carroll with certainty. Coleman saw Carroll at close range before the high-speed chase, when Carroll was sitting in the passenger seat of the getaway car while it was stopped at a red light. Coleman continued to watch Carroll as the getaway car passed within a few feet of Coleman's bumper. While it was raining the day of the robbery, Coleman testified that he had a "clear view" of Carroll. Officer Coleman and Officer Sisco saw Carroll exit the getaway car at the end of the high-speed chase, shortly before the officers exchanged gunfire with Carroll. The officers were approximately twenty to twenty-five yards from Carroll when they were able to see him. Both officers were able to pick the accomplice Kevin Carroll out of a line-up,[3] which is a strong objective indicator of the reliability of the officers' identifications of Gerald, because the officers, especially Coleman, were better able to see Gerald than Kevin. The officers' testimony was not seriously attacked; Carroll's counsel argued to the jury that the officers were "mistaken."

Second, Carroll made a highly incriminating statement to the police. In light of the high-speed chase and shoot-out, the police asked Carroll, after arresting him,

---

[3]Kevin Carroll was not tried with Gerald Carroll, but the jury heard overwhelming evidence of Kevin's guilt to support the officers' identifications. Kevin was also identified in a line-up by the bank security officer, who saw Kevin at close range before Kevin put on his mask. Kevin was also the registered owner of the getaway car and was arrested at home in possession of approximately $11,000 in cash.

"Where did you drop the gun?" Carroll pointed the police to a nearby spot in the alley where a .22 caliber handgun was found. The .22 matches the bank manager's description of the gun pointed at her in the robbery. She saw the gun at close range and her description was fairly specific; she said the gun was "dark, . . . either dark grey or black," "small," and had "a round barrel." The manager saw the .22 at trial and said that it was similar to the gun she had seen at the robbery. The .22 was found with four spent shall casings, which shows that the gun had been fired four times and not reloaded. Officer Sisco testified that the robber shot at him four times.[4] Moreover, the police found dye-stained money in the same alley where they found the gun. The money was later identified, by serial number, as taken from the bank. Thus, Carroll's own statement directly ties him to a weapon almost assuredly used in the robbery and fired at the police, and strongly, though less directly, ties him to the robbery money.

In light of this overwhelming evidence against Carroll, we conclude that the admission of evidence of his prior conviction had only a slight impact on the trial, and thus the error was harmless. Compare LeCompte, 99 F.3d at 279 ("The evidence supporting conviction was by no means overwhelming, so the admission of highly prejudicial Rule 404(b) evidence cannot be dismissed as harmless error.") with United States v. Mejia-Uribe, 75 F.3d 395, 399 (8th Cir. 1996) ("[T]he government's case against Uribe was overwhelming . . . [so] introduction of the 1978 conviction did not have 'substantial and injurious effect or influence in determining the jury's verdict.'" (citation omitted)). The fact that the jury deliberated for several hours after a trial spanning four days does not convince us otherwise.

---

[4]There were two exchanges of gunfire. Officer Coleman testified that the robber shot at him six times, then dropped his gun. This gun, a .38 taken from the bank security officer, was also recovered, although there is no evidence directly tying the gun to the defendant. Officer Coleman then paused to reload his gun, and Officer Sisco took up the chase. At this point, according to Sisco's testimony, the robber shot at him four times with the second gun.

II.

As mentioned previously, upon arrest, Carroll indicated to the police that the gun he had tossed aside was nearby. At trial, a police officer testified about Carroll's statement concerning the gun. Carroll argues that this testimony was improperly admitted because his statement was involuntary and obtained through police coercion. A conviction based on an involuntary confession, obtained through police coercion, violates the Due Process Clause. See Colorado v. Connelly, 479 U.S. 157, 163 (1986). The District Court, adopting the recommendation of a Magistrate Judge, determined that the statement was not coerced but freely given. Carroll does not assert a violation of Miranda v. Arizona, 384 U.S. 436 (1966), presumably because an exception to the Miranda rule exists in these circumstances. See New York v. Quarles, 467 U.S. 649, 655 (1984) (creating public safety exception in case where police questioned arrestee about location of gun before administering Miranda warnings). Additionally, although the District Court did not rely on this testimony, the arresting officer testified that he administered Miranda warnings before asking Carroll about the gun.

A statement is involuntary when, in light of the totality of circumstances, it is the result of such pressure exerted upon the suspect that his will was overborne. See United States v. Jorgensen, 871 F.2d 725, 729 (8th Cir. 1989). We review the District Court's factual findings for clear error but review the ultimate determination of voluntariness de novo. See United States v. Otters, 197 F.3d 316, 317 (8th Cir. 1999). While the police did use physical force against Carroll and spray him with mace, facts that would favor him in the voluntariness analysis, the District Court, consistent with the evidence, determined that the police were only acting in response to Carroll's attempt to resist arrest. This is not a case where the police beat a confession out of a defendant, but rather a situation where the police were required to use force to subdue a fighting suspect, and then, after the suspect was under control, asked him where they could find his gun. There is no evidence in the record to suggest that Carroll answered

because he feared the police would use further force against him. Carroll's statement was properly admitted.

## III.

Carroll also challenges the constitutionality of 18 U.S.C. § 3559(c) (1994 & Supp. IV 1998), the so-called "three strikes" law, as applied to him. Pursuant to the statute, the District Court sentenced Carroll to life imprisonment for his role in the credit union robbery.[5] This Court has previously rejected a smorgasbord of constitutional challenges to the statute, including due process, double jeopardy, cruel and unusual punishment, and ex post facto arguments. See United States v. Farmer, 73 F.3d 836, 840-41 (8th Cir.), cert. denied, 518 U.S. 1028 (1996). The only appellate decision finding the statute unconstitutional, United States v. Kaluna, 152 F.3d 1069 (9th Cir. 1998) (finding that burden-shifting provisions of statute violated due process), has been superseded by an en banc decision of the same court, 192 F.3d 1188 (9th Cir. 1999) (en banc) (upholding statute in all respects), petition for cert. filed, No. 99-7620 (U.S. Dec. 30, 1999). As Carroll raises no argument not previously rejected in Farmer, his constitutional claims must fail.

The decision of the District Court is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[5]Carroll received an additional sentence, which he does not challenge, for his conviction on a charge pertaining to the firearm used in the robbery.