*266 STRAS, Justice
(concurring).
I join the court’s opinion, but write separately to address a strange turn in our law on the admissibility of other-bad-acts evidence, which we have also referred to as Spreigl evidence. Minnesota Rule of Evidence 404(b), which generally renders such evidence inadmissible, states that
[ejvidence of another crime, wrong, or act is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
The district court’s decision to admit the other-bad-acts evidence in this case demonstrates the problem With our current interpretation of the word “plan.” Over time, we have imported the modus-operan-di analysis from the exception for “identity” evidence into the test for admitting evidence of a “plan.”
This development has distorted the analysis under Rule 404(b) in two ways. First, it has conflated the standards for evaluating the admissibility of identity and plan evidence, which are separate categories of evidence under Rule 404(b). Second, the now-sweeping scope of the plan exception risks the admission of evidence that a person is acting in conformity with his or her bad character, which violates the categorical prohibition on propensity evidence in the first sentence of Rule 404(b). All that is required under the plan exception today is that a defendant’s prior bad acts be “markedly similar” to the acts with which he or she is charged, State v. Ness, 707 N.W.2d 676, 689 (Minn.2006), which is precisely the type of evidence that a jury is most likely to .treat as propensity evidence. To fix what I believe has become a textual conflict in Rule 404(b), I would refer this matter to the Advisory Committee for. the Rules of Evidence for further study and action.
I.
Before addressing how I would resolve the conflict, I begin with a discussion of the evolution of the law on other-bad-acts evidence. In State v. Sweeney, decided long before the Minnesota Rules of Evidence came into existence, we announced six exceptions to the “general rule” that “evidence which in any manner shows or tends to show that the accused has committed another crime independent of that for which he is on trial is inadmissible.” 180 Minn. 450, 455, 281 N.W. 225, 227 (1930). In Sweeney, we explained that this general rule
has certain exceptions not to be stated categorically, but among which evidence of other crimes is admissible to prove the accusation when it tends to establish (1) motive; (2) intent; (3) absence of mistake or accident; (4) the identity of the accused; (5) sex crimes; (6) a common scheme or plan embracing the commission of similar crimes so related to each other that proof of one or more of such tends to establish the accusation. Such is the common law.
Id. at 455, 231 N.W. at 227 (emphasis added); see also State v. Fitchette, 88 Minn. 145, 148, 92 N.W. 527, 528 (1902) (allowing the admission of evidence of a previous uncharged offense “where the previous offense is a part of a scheme or conspiracy incidental to or embraced in proof of the charge on trial”). We clarified that a common scheme or plan “involves a general and composite plan or scheme.” Sweeney, 180 Minn, at 455, 231 N.W. at 227. According to Sweeney, “[s]ome connection between the crimes must be shown to have existed in fact and in the mind of the defendant, uniting them for the accom *267 plishment of a common purpose before such evidence can be received,” Id. at 456-56, 231 N.W. at 227-28.
Initially, the common-scheme-or-plan exception “was intended primarily to cover such eases as larceny, embezzlement, forgery, and swindling.” State v. Spreigl, 272 Minn. 488, 492 n. 9, 139 N.W.2d 167, 170 n. 9 (1965). It was “originally reserved for those offenses which could be described as preplanned steps in a larger scheme of which the charged offense was another step.” Ness, 707 N.W.2d at 687 (quoting State v. Forsman, 260 N.W.2d 160, 167 (Minn.1977)) (internal quotation marks omitted). There must have been “such a relation between the offenses that they were part of one transaction.” Spreigl, 272 Minn, at 492 n. 9, 139 N.W.2d at 170 n. 9 (citing, among other cases, State v. Wofford, 262 Minn. 112, 118, 114 N.W.2d 267, 271 (1962); State v. Thompson, 241 Minn. 59, 67, 62 N.W.2d 512, 519 (1954); State v. Yurkiewicz, 212 Minn. 208, 210, 3 N.W.2d 775, 776 (1942); State v. Stuart, 203 Minn. 301, 306, 281 N.W. 299, 302 (1938); and Sweeney, 180 Minn, at 455, 231 N.W. at 227). The plan exception at common law, in other words, was limited to evidence showing a progression of criminal behavior, each step of which was part of one overall scheme or plan.[1]
Another admissible category of other-bad-acts evidence discussed in Sweeney was identity evidence, which required a unique “pattern of conduct.” State v. Bowser, 305 Minn. 431, 436, 234 N.W.2d 890, 893 (1975). This type of evidence, commonly referred to as a modus operands is a signature that allows the jury to infer that the same person committed two separate crimes by virtue of the unique manner in which the crimes were committed. See id. at 435-36, 234 N.W.2d at 892-93, When the identity of the perpetrator is in dispute, the presence of a unique “signature” can make it “highly probable” that the defendant, if he or she committed the first crime, is also the perpetrator of the subsequent crime.[2] See, e.g., Thompson v. State, 690 N.E.2d 224, 234 (Ind.1997); see also People v. Engelman, 434 Mich. 204, 453 N.W.2d 656, 662 (1990) (explaining the permissible uses of other-bad-acts evidence, including identity evidence).
For the most part, these two exceptions were completely separate before 1977, when the Minnesota Rules of Evidence first came into existence. The common-law rule, as enunciated in Sweeney, be *268 came Minn. R. Evid. 404(b).[3] That same year, however, we also decided State v. Forsman, 260 N.W.2d 160 (Minn.1977), which conflated what had previously been distinct inquiries for identity and plan evidence. Specifically, we explained that the plan exception had “evolved to embrace evidence of offenses which, because of their marked similarity in modus operandi to the charged offense, tend to corroborate evidence of the latter [offense].” Id. at 167. Our discussion in Forsman was the starting point for the eventual merger of the standards governing the admissibility of identity and plan evidence under Rule 404(b). After Forsman, the standard evolved from the common-law focus on the existence of an overall scheme or plan that may involve multiple crimes, regardless of the similarity of each individual crime, to an exclusive focus on the similarity among the crimes, regardless of their connection.
Our holding in Forsman principally depended upon a single case, State v. Taylor, which did not support Forsman’s reasoning. 290 Minn. 515, 187 N.W.2d 129 (1971). Taylor involved the prosecution of an individual who was in the “business of prostitution.” Id. at 515, 187 N.W.2d at 130. The district court allowed the State to present evidence that the defendant had previously held another woman hostage in his apartment and sexually assaulted her under facts that were substantially similar to the facts of the charged offense. Id. at 517,187 N.W.2d at 131. The district court admitted the evidence for a variety of reasons, including to show a common scheme or plan, a method of operation (i.e., identity), a motive, and criminal intent. Id. at 517, 187 N.W.2d at 131. Without suggesting that we were affirming the trial court’s decision on any one of these individual grounds, we stated in Taylor that “[t]he determination of whether the independent criminal acts are so closely related to the crime charged as to be admissible” was a matter within the district court’s discretion. Id. at 517, 187 N.W.2d at 131. Given our reliance on the district court’s broad discretion and not the application of any individual exception, it is just as likely that we affirmed the admission of the other-bad-acts evidence as identity evidence as it was that we did so under the plan exception. It is reasonable to suggest, therefore, that Forsman’s merger of the standards for identity and plan evidence, which now both turn on similarity, may have just been an accident, not a deliberate decision.
In a 2006 decision, State v. Ness, we attempted to clarify the test for admitting other-bad-acts evidence under the plan exception, which by the time Ness was decided, had morphed into a substantial-similarity standard. 707 N.W.2d at 688. In Ness, we explained that, “in determining whether a bad act is admissible under the common scheme or plan exception, it must have a marked similarity in modus operan-di to the charged offense,” id. (emphasis added), not just a substantial similarity, see, e.g., State v. Kennedy, 585 N.W.2d 385, 391 (Minn.1998). Ness was an attempt to retreat from our prior decisions that had expansively interpreted the word “plan” under Rule 404(b), including Kennedy. See Ness, 707 N.W.2d at 688 (“The common scheme or plan exception may have been applied more broadly than it *269 should [have] be[en].”). According to Ness, we were backtracking to avoid having the exception for plan evidence swallow the categorical rule against propensity evidence. See id. (“[T]he closer-the relationship between the other acts and the charged offense, in terms of time, place, or modus operandi, the greater the relevance and probative value of the other-acts evidence and the lesser the likelihood that the evidence will be used for an improper purpose.”).
Though laudable in its goal of reconciling our case law, Ness solved one problem but exacerbated another. It narrowed the circumstances under which courts could admit other-bad-acts evidence by requiring a “marked similarity” between the prior bad act and the charged offense, but it did not solve the problem created by Fors-man, which had inadvertently merged the identity and plan exceptions. By requiring an even closer similarity between the prior bad act and the charged offense, Ness paradoxically preserved the admissibility of the evidence that a jury would be most likely to misuse as propensity evidence. As a matter of logic and contrary to our analysis in Ness, the greater the factual similarities between the charged crime and the prior bad acts, the more likely it is that the jury will improperly draw the inference that the defendant committed the charged crime. Faced with evidence that a defendant has committed five markedly similar robberies, for example, a jury is likely to infer that the defendant committed a sixth robbery even if there is no other evidence of guilt. In other words, after Ness changed the standard back to marked similarity, the plan exception now applies in narrower circumstances and in fewer instances, but it allows courts to admit only the evidence that the jury is most likely to misuse.
Even after narrowing it in Ness, the plan exception is still considerably broader than at common law. The State can admit evidence of a “plan” simply by showing that the defendant has previously committed the same type of crime in a markedly similar manner. But similarity between crimes, even marked similarity, is not evidence of an actual plan, which requires an “overall design or objective,” Webster’s Third New International Dictionary 1729 (1976); see also The American Heritage Dictionary of the English Language 1001-02 (1976) (defining “plan” as “a systematic arrangement of details”), or larger scheme, Ness, 707 N.W.2d at 687.
The identity exception has also expanded, which has further contributed to the overlap between the two exceptions. Though we still apply the identity exception to signature crimes, we have loosened its requirements over time to include crimes that are committed in a substantially similar manner, including those connected by time and place. See State v. Cogshell, 588 N.W.2d 120, 124 (Minn.1995). In fact, prior to our decision in Ness, the two exceptions were identical, each applying when a subsequent crime is substantially similar to a prior bad act. Now, by virtue of Ness, the common-scheme-or-plan exception is just a narrower version of the identity exception.
II.
In my opinion, the Advisory Committee for the Rules of Evidence should consider whether an amendmént to Rule 404(b) would resolve the inconsistency that Fors-man created and Ness attempted to fix. The common and ordinary meaning of the word “plan” is consistent with our earliest articulations of the plan exception, including from Sweeney. Compare Webster’s Third New International Dictionary 1729 (1976) (defining “plan” as an “orderly ar *270 rangement of parts in terms of an overall design or objective”), with Sweeney, 180 Minn, at 455, 231 N.W. at 227 (requiring a “composite plan”). With no indication that the Rules of Evidence intended- to abrogate the common law, there is no reason for us to continue to struggle with the plan exception when a return to the common-law rule would resolve the conflict. See Minn. R. Evid. 404(b) committee cmt. (1977) (“The rule is generally consistent with the common law doctrine that character evidence is not admissible to prove that an individual acted in conformity with his character on a specific occasion. Certain exceptions to this general doctrine are contained in the rule.”). Nor is there any reason for two discrete exceptions—identity and plan—to overlap with one another.
The approaches of many federal" courts are also consistent with the common law. For example, in some circuits, the plan exception only extends to prior bad acts that were committed within the same composite scheme or plan as the charged offense. See, e.g., United States v. Carroll, 207 F.3d 465, 468 (8th Cir.2000) (“In some circumstances, a defendant’s prior bad acts are part of a broader plan or scheme relevant to the charged offense.”); United States v. Lynn, 856 F.2d 430, 435 (1st Cir.1988) (declining to admit the defendant’s previous drug offense to show a “common scheme” because nothing suggested that the defendant’s previous and current drug offenses were related, “but for involvement with the same illicit substance”); Lewis v. United States, 771 F.2d 454, 455-56 (10th Cir.1985) (admitting evidence of a defendant’s burglary of a local garage store, when the defendant intended to use the cutting torch and other supplies in a plan to burglarize a post office later that evening). In fact, an attorney who appears in both federal and state court in Minnesota has to learn our unique rules in addition to those of the Eighth Circuit, which continues to adhere strictly to the common-law rules on identity and plan evidence under Fed.R.Evid. 404(b). See Carroll, 207 F.3d at 468 (explaining that identity evidence requires a signature and plan evidence requires “a broader plan or scheme” under Rule 404(b)).
I fully understand that, other than in Ness, we have been quite reluctant to change our approach to the interpretation of Rule 404(b). For example, in one cáse, we rejected the narrowing of the plan exception for cases involving sexual assault, stating that we had “repeatedly upheld admission of [other-bad-acts] evidence in cases” involving rape or sexual abuse. See State v. Wermerskirchen, 497 N.W.2d 235, 240-41 (Minn.1993). But my reading of Wermerskirchen is that our reluctance to reconsider our law was due, in large part, to the weight of precedent in the particular area in which the call for change arose, not some general inflexibility' to reconsider any aspect of Rule 404(b). Besides, an overly strict reading of Wermerskirchen fails to account for what we later held in Ness, which itself was a retreat from a longstanding, post-Forsman interpretation of the plan exception. I do not read Wer-merskirchen, in other words, as foreclosing the possibility of allowing the Advisory Committee on the Rules of Evidence to consider ah amendment to Minn. R. Evid. 404(b), which, as now interpreted, treats the plan exception as mere surplusage and conflicts with the categorical prohibition on using other-bad-acts evidence as propensity evidence.

. Consider an example of the common-scheme-or-plan exception at common law. Suppose that a defendant commits a robbery to obtain money to purchase a firearm to commit a murder. If the defendant were successful in the commission of both crimes, the evidence of the earlier robbery would be admissible to show a composite plan—that is, “preplanned steps in a larger scheme.” Ness, 707 N.W.2d at 687. Under these circumstances, the evidence of the earlier robbery would allow the jury to make "the permissible inference that, regardless of character, a person who has formulated a plan is more likely to carry out the elements of the plan,” 1 McConnick on Evidence § 190 (Kenneth S. Broun ed., 7⅛ ed.2016), not to infer that the defendant has a propensity to commit crimes.

. A textbook example of the "identity” exception will demonstrate its historically narrow scope. Suppose that a defendant committed a robbery several years ago, and did so while wearing a distinctive mask. A recent robbery also involves a person who wore the same type of mask. The defendant’s commission of the prior robbery would be admissible, assuming the identity of the perpetrator of the most recent 'robbery is in dispute, to demonstrate that the same person committed both crimes. See generally United States v. LeCompte, 99 F.3d 274, 278-79 (8th Cir.1996) (explaining what qualifies as a signature criminal pattern).

. At that time, Rule 404(b) stated:
Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
Minn. R. Evid. 404(b) (1978) (emphasis added).