No. 96-1308

United States of America,       *

     Plaintiff-Appellee,     *

                                 *  Appeal from the United States
     v.                      *  District Court for the
                                 *  District of South Dakota.

Leo LeCompte,             *

     Defendant-Appellant.    *

_____

Submitted:  July 26, 1996

Filed:  November 1, 1996
_____

Before BOWMAN, BEAM, and LOKEN, Circuit Judges.
_____

LOKEN, Circuit Judge.

Leo LeCompte appeals his conviction and sentence for abusive sexual contact with his eleven-year-old niece in Indian country. See 18 U.S.C. §§ 1153, 2244(a)(1), and 2246(3). We conclude that the district court abused its discretion under Rule 404(b) of the Federal Rules of Evidence by admitting testimony describing LeCompte's prior sexual abuse of another child. Accordingly, we reverse and remand for a new trial.

**I.**

On the eve of trial, the government served notice that it would offer evidence that LeCompte had previously molested three other children. The district court ruled this offer untimely and inadequate under Rules 413(b) and 414(b), the new rules governing evidence of similar crimes in sexual assault and child molestation

prosecutions. The court ruled the government's notice timely and adequate under Rule 404(b) and reserved decision as to Rule 404(b) admissibility until trial.

Early in the trial, LeCompte's niece, C.D., described the charged offense as follows. One evening in January 1995, during an overnight visit to the LeCompte home, she was lying on a couch watching a movie while her siblings had fallen asleep on the floor. LeCompte lay down on the couch behind her, repeatedly placed her hand on his penis, and reached under her shirt and brassiere to touch her breasts. When LeCompte began to move his hand toward her groin area, she left the couch and joined her sister on the floor. LeCompte then left the room.

After C.D. testified, the government called one of the three prior victims, T.T., another of LeCompte's nieces, to make a Rule 404(b) offer of proof outside the jury's presence. T.T. stated that from 1985 through 1987, when she was nine to eleven years old, LeCompte repeatedly exposed himself to her, forced her to masturbate him, and touched her in the groin area. She testified that many of the touching incidents arose during or after games LeCompte would play, including hide-and-seek. After hearing this testimony, the district court overruled LeCompte's objection to this testimony:

> [A]rguably, the defendant was playing games and ingratiating himself with the intended victim in each case. So, in that sense it is part of a plan and preparation.
>
> I do not think that identity is any issue. Motive is not an issue. Knowledge is not an issue. Absence of mistake or accident is not an issue.
>
> *   *   *   *   *
>
> This is a very close issue in this case. . . . I feel that the evidence should be admitted. That while it is definitely prejudicial evidence, that the prejudicial

evidence does not overweigh the probative value as to plan, preparation, and modus operandi.

* * * * *

And the Court feels that the evidence is relevant as to the game playing, the exposure incidents, which the Court believes the jury could find were intended to condition the child, or children, and to lay the groundwork, so to speak, for later sexual activities which would follow upon the exposures and the establishing of a game-like relationship between the defendant and the victims.

The government then recalled C.D. to lay foundation for the Rule 404(b) evidence. She testified that, on another occasion, LeCompte invited her into his bedroom, where he was dressed in only a shirt, and "asked me if I wanted to play hide and go seek." T.T. then took the stand and repeated her testimony to the jury, over LeCompte's objection, and the district court gave a cautionary Rule 404(b) instruction. The jury convicted LeCompte of the two counts charged in the indictment. The district court, departing upward, sentenced him to eighty-four months in prison.

## II.

Under Rule 404(b), testimony concerning other bad acts is admissible "if it is relevant to a material issue, established by a preponderance of the evidence, more probative than prejudicial, and similar in kind and close in time." United States v. Baker, 82 F.3d 273, 276 (8th Cir. 1996). Such evidence is not admissible "solely to prove the defendant's criminal disposition." United States v. Shoffner, 71 F.3d 1429, 1432 (8th Cir. 1995). On appeal, LeCompte argues that T.T.'s testimony of prior sexual abuse was relevant only as proof of LeCompte's bad character and criminal disposition. The district court's decision to admit evidence under Rule 404(b) is reviewed for abuse of discretion. See United States v. Williams, 95 F.3d 723, 730 (8th Cir. 1996).

-3-

The question whether evidence of prior sexual abuse is admissible under Rule 404(b) in a sex abuse prosecution has been a thorny, frequently litigated issue. In general, at least in this circuit, "prior sex offenses committed upon the victim of the charged offense" are usually admissible, but "[w]e are far more hesitant to affirm the admission of evidence of prior sexual acts or crimes committed against persons other than the victim of the charged offense." United States v. Yellow, 18 F.3d 1438, 1440 & n.2 (8th Cir. 1994). This case falls within the latter category, so the government's burden to establish that T.T.'s testimony was relevant under Rule 404(b), and more probative than prejudicial under Rule 403, is greater than if C.D., who accused him of the charged offense, was the victim of prior sexual abuse.

The district court admitted T.T.'s testimony as relevant to proving "plan, preparation, and modus operandi." Rule 404(b) specifically authorizes use of prior bad acts evidence to prove "plan" or "preparation." In many cases, such evidence has been admitted because it showed the planning of or preparation for the charged offense. See United States v. Ratliff, 893 F.2d 161, 165 (8th Cir. 1990) (dealings with another investor in the same fraudulent scheme), cert. denied, 498 U.S. 840 (1990); United States v. Calvert, 523 F.2d 895, 907 (8th Cir. 1975) (efforts to attract an accomplice), cert. denied, 424 U.S. 911 (1976). In other cases, evidence of related or similar prior offenses has been admitted because it tended to prove that defendant employed a "common scheme" to commit a series of similar crimes. See Baker, 82 F.3d at 276 ("remarkably similar" extortion of other motorists); United States v. Crouch, 46 F.3d 871, 875 (8th Cir. 1995) (prior illegal gun sales), cert. denied sub nom. Mandacina v. U.S., 116 S. Ct. 193 (1995); United States v. Sanchez, 963 F.2d 152, 155 (8th Cir. 1992) (similar dealings with other aliens); United States v. Gano, 560 F.2d 990, 993 (10th Cir. 1977) (prior sexual intercourse with mother was "indispensable to a complete showing" of the alleged sexual offense against her daughter).

In this case, the Rule 404(b) evidence was not part of the charged offense and did not tend to prove a "common scheme or plan." The victims were different, and the events were far apart in time. Absent more specific linkage, such evidence is relevant to "plan" or "preparation" only insofar as it tends to prove a propensity to commit crimes, which Rule 404(b) prohibits. See Government of the Virgin Islands v. Pinney, 967 F.2d 912, 916 (3rd Cir. 1992) (evidence defendant raped victim's sister excluded); United States v. Has No Horse, 11 F.3d 104, 106 (8th Cir. 1993) (evidence defendant propositioned two other teen-aged girls excluded); United States v. Fawbush, 900 F.2d 150, 151-52 (8th Cir. 1990) (evidence defendant sexually abused his daughters excluded); United States v. Mothershed, 859 F.2d 585, 590 (8th Cir. 1988) ("[n]or did the evidence tend to show a plan, unless on the pure speculation that a similar plan underlay the earlier conviction").

However, the government argues, and the district court agreed, that in this case there is sufficient linkage between the Rule 404(b) evidence and the charged offense because the unrelated prior bad acts establish a "signature" *modus operandi*, that is, "other crimes by the accused so nearly identical in method as to earmark them as the handiwork of the accused." United States v. Drew, 894 F.2d 965, 970 (8th Cir. 1990), cert. denied, 494 U.S. 1089 (1990), quoting McCormick on Evidence § 190(3), at 559 (3d ed. 1984). The theory is that a "jury can rationally infer from evidence that the defendant committed a prior crime in an unusual and distinctive manner and [from] evidence that a second similar crime was committed in the same unusual and distinctive manner that the defendant committed the second crime." Pinney, 967 F.2d at 916.

Normally, this type of evidence is offered to prove identity in cases where it is clear that a crime has been committed and the issue is whether defendant committed it. In this case, identity is not at issue. It is undisputed that LeCompte was the only adult present at the time of the alleged offense. The issue is whether

the alleged offense occurred. Although the use of "signature" crime evidence in a case of this type is more unusual than when identity is at issue, and although its use is arguably nothing more than proof of propensity, the above-quoted theory encompasses this issue (whether a crime was committed at all) as well as the identity issue (a crime was committed, but did defendant do it). Thus, we will assume that legitimate "signature" evidence would be admissible for this purpose as well, at least if the charged offense fit the "signature" pattern established by the prior bad acts. But to be admissible for this purpose, the government must meet the standard applicable when identity is at issue, that is, a "much greater degree of similarity between the charged crime and the uncharged crime is required when the evidence of the other crime is introduced to prove identity than when it is introduced to prove a state of mind." United States v. Myers, 550 F.2d 1036, 1045 (5th Cir. 1977). Thus, "signature" evidence must tend to prove a "unique *modus operandi*." Mothershed, 859 F.2d at 590.

The government argues that LeCompte's pattern of playing games with a child to gain her confidence, exposing himself to her, and later sexually assaulting her was evidence of a sufficiently unique *modus operandi*. On this record, we disagree. LeCompte was a member of each child's extended family. The fact that he played games with each niece (particularly a game as common as hide and seek), and the fact that he gained each child's "confidence," are such commonplace family occurrences that they do not evidence "signature" criminal behavior. While an abusive family member might play games and gain rapport with children to prepare to commit sex crimes, the initial game playing and resulting rapport are indistinguishable from the behavior of innocent family members.

Moreover, even if LeCompte's game playing with T.T. was far more elaborate and sinister than the behavior of an innocent uncle, there was no evidence that he prepared to commit the charged offense in a similarly elaborate manner. True, the crimes are

similar, but the charged offense as described by C.D. at trial was the product of unplanned opportunity, not "signature" preparation. To the extent that the prior abuse of T.T. and the charged offense are in fact similar, they reflect misconduct common to all too many child sex offenders. Therefore, T.T.'s testimony was not relevant to prove plan, preparation, or *modus operandi*. See Fawbush, 900 F.2d at 151 (defendant's sexual abuse of another victim "did not show a unique method also present in the charged offenses that tended to establish" identity).

Alternatively, the Government argues that T.T.'s testimony was relevant to prove that LeCompte acted with the intent necessary to violate 18 U.S.C. § 2246(3). When prior crimes evidence is relevant to prove intent, it need only be similar to the charged offense; it need not evidence a "signature" *modus operandi*. See United States v. Burkett, 821 F.2d 1306, 1309 (8th Cir. 1987). However, the district court did not admit T.T.'s testimony to prove intent. Intent was not a serious issue in this case. If the jurors believed C.D.'s testimony as to LeCompte's conduct, they would hardly doubt that he intended criminal sexual contact. Such seriously prejudicial evidence should not be admitted if its only legitimate purpose is to prove a nominally contested issue. See Mothershed, 859 F.2d at 590 ("if the evidence were relevant to intent, its relevance would be so slight, when compared with the devastatingly prejudicial impact of such evidence in the mind of a jury, that to admit it would be an abuse of discretion under Rule 403"); accord United States v. LaChapelle, 969 F.2d 632, 638 (8th Cir. 1992); Pinney, 967 F.2d at 917-18; United States v. Herman, 589 F.2d 1191, 1198 (3d Cir. 1978) (weak but highly prejudicial *modus operandi* evidence must be excluded under Rule 403), cert. denied, 441 U.S. 913 (1979).

This prosecution turned on whether the jury believed C.D.'s testimony of sexual abuse. Though LeCompte did not testify, other members of his extended family contradicted various aspects of

C.D.'s testimony.  The evidence supporting conviction was by no means overwhelming, so the admission of highly prejudicial Rule 404(b) evidence cannot be dismissed as harmless error.  In these circumstances, we conclude that the district court abused its discretion in admitting T.T.'s testimony, and LeCompte is entitled to a new trial.

## III.

Our conclusion that LeCompte is entitled to a new trial makes it unnecessary to consider his other claims of trial and sentencing error. However, we will briefly discuss two sentencing issues that may recur if LeCompte is again tried and convicted for one or both of the charged offenses.  After determining that LeCompte's Guidelines sentencing range is thirty-three to forty-one months in prison, the district court departed upward and imposed an eighty-four-month sentence because LeCompte did not receive an adequate sentence for a prior conviction, and because the "victim . . . suffered psychological injury much more serious than that normally resulting from commission of the offense,"  U.S.S.G. § 5K2.3.  We have two problems with this upward departure.

First, in departing upward, the court relied in part on Commentary 5 to U.S.S.G. § 2A3.4:  "If the defendant's criminal history includes a prior sentence for conduct that is similar to the instant offense, an upward departure may be warranted."  However, Commentary 5 was added to the Guidelines on November 1, 1995, after LeCompte's January 1995 offense.  The Ex Post Facto Clause precludes use of a Guideline in effect at the time of sentencing if its use produces a harsher sentence than the Guidelines in effect when the crime was committed.  See United States v. Bell, 991 F.2d 1445, 1452 (8th Cir. 1993).

The district court also invoked its inherent authority to depart upward because of aggravating circumstances "not adequately

taken into consideration by the Sentencing Commission in formulating the guidelines." 18 U.S.C. § 3553(b). However, in U.S.S.G. § 4A1.3, the Sentencing Commission has specifically prescribed how upward departures should be imposed "when the criminal history category significantly under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit further crimes." As we explained in United States v. Day, 998 F.2d 622, 625 (8th Cir. 1993), cert. denied, 114 S. Ct. 2140 (1994):

> [t]o impose an upward departure under § 4A1.3, the sentencing court first must proceed along the criminal history axis of the sentencing matrix, comparing the defendant's criminal history with the criminal histories of other offenders in each higher category. If the court reaches the highest criminal history category, Category VI, and concludes that the Guidelines range is still inadequate, it may impose a reasonable sentence above the Category VI range.

In this case, the record suggests that the district court did not follow this prescribed method of calculating an upward departure based upon criminal history. Though our prior cases do not make compliance with § 4A1.3 a "ritualistic exercise," the record must reflect that this Guideline has been properly applied. See Day, 998 F.2d at 625.

Second, "before a district court can depart upward on a ground not identified . . . either in the presentence report or in a prehearing submission by the Government, Rule 32 [of the Federal Rules of Criminal Procedure] requires that the district court give the parties reasonable notice that it is contemplating such a ruling." Burns v. United States, 501 U.S. 129, 138 (1991). In this case, LeCompte's presentence report stated that a departure might be appropriate under Commentary 5 to § 2A3.4. However, the district court first disclosed that it was departing in part because of psychological injury to the victim just before

-9-

pronouncing sentence.  Because the psychological injury issue is fact intensive, notice of a possible departure on this ground should be given prior to the sentencing hearing.

The judgment of the district court is reversed and the case is remanded for a new trial.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.