Gregory Ray GARNER *v.* STATE of Arkansas

CA CR 02-332                                    101 S.W.3d 857

Court of Appeals of Arkansas
Division I
Opinion delivered April 2, 2003

*Louis L. Loyd*, for appellant.

*Mark Pryor*, Att'y Gen., by: *Kent G. Holt*, Ass't Att'y Gen., for appellee.

JOHN MAUZY PITTMAN, Judge. The appellant in this criminal case was a high school teacher. After reports that he had forced himself on some of his female students, he was charged with two counts of violation of a minor in the second degree and one count of violation of a minor in the first degree. After a jury trial, he was convicted of these offenses and sentenced to three years' imprisonment. This appeal followed.

Appellant does not challenge the sufficiency of the evidence on appeal, but instead limits his arguments to two evidentiary matters. First, he asserts that the trial judge erred in allowing another student, D.C., to testify that appellant made sexual overtures to her at school that were very similar in their expression and circumstance to those described by the victims. Second, he asserts

that the trial court erred in refusing to permit him to introduce a written, prior inconsistent statement by one of the victims. We find no error, and we affirm.

Three victims testified at trial. The first, M.M., testified that she was sixteen years old and had been in appellant's Health class. At the field house, appellant would always tell her that she was pretty and that she should model. Sometimes he would ask her to stay after class, but she would not. One day in late October or early November, she found herself in the field house with appellant after the boys in her class had left. The lights were dim. Appellant came up behind her, leaned over her shoulder, ran his hands from her breasts to her stomach, and kissed her on the side of her face. When she tried to leave, appellant grabbed her arm and told her not to tell anyone because it would get them both in trouble.

The next victim, H.M., referred to three separate incidents regarding appellant. She testified that she was fifteen years old and had been in appellant's Health class. Every time she looked up in class, she saw that appellant was staring at her. Appellant told her she was gorgeous as she was leaving the classroom or walking down the hall. The first incident occurred one day when appellant told H.M. that he needed to see her after class. She remained at her desk when her classmates left the room. Appellant turned out the lights and shut the door. H.M. was uncomfortable and walked behind appellant's desk. Appellant approached her from behind and put his hand on her lower back. He told her that she should leave or they would both get in trouble. The second incident occurred on November 18. The lights went out in the school building during a storm and everyone was told to go outside. H.M. sat near the front of the classroom and was the last to leave. As she neared the doorway, appellant moved in front of her. She grabbed the shirt of the student in front of her as she left the room to avoid being cornered by appellant. The third incident occurred in the field house in late November or December. Appellant asked the class to help him put away football equipment at the field house. H.M. went to the field house and found herself alone in the equipment room with appellant. As she bent over to pick up a football helmet, appellant approached her from behind, placed his chest against her back, rubbed her arms, and kissed her. H.M. was frightened and left the room.

The third victim, K.P., also referred to three incidents regarding appellant. She testified that she was sixteen years old and that appellant had been one of the coaches at her school. The first incident occurred during the storm on November 18. K.P. had been in another teacher's Biology class when the lights went out at school. The Biology class was dismissed. While K.P. was standing alone at the end of the hallway looking outside, appellant came up behind her, grabbed her waist, rubbed her side near her breast, and kissed her on the corner of the mouth. Appellant told her that she had better leave or they would both get in trouble, and that she should not tell anyone what happened. K.P. left, upset and crying. The second incident occurred in December when K.P. went to the field house to get a study guide from her biology teacher. After she left her teacher's office and was entering the gym, appellant approached her, grabbed her by the waist, backed her up against the wall, held both her hands over her head with his left hand, stuck his right hand down her pants, and penetrated her vagina with his finger. He again told her that she had better leave or they would both be in trouble, and that he could lose his job over the incident. The third incident occurred in January. K.P. had left a schoolbook in appellant's classroom. When she came to retrieve it, appellant grabbed her arm, rubbed her side and around her breasts, and told her that she had better leave.

K.P. felt frightened and ashamed, and did not tell anyone about the incidents until February 14, when two school officials, Mr. LaFargue and Ms. Adams, came to K.P.'s house and talked with her mother about rumored incidents at school. K.P. told her mother about the first and third incidents, but did not tell her about the second incident. It was arranged for the victims, their mothers, and school officials to meet at the police station. K.P. testified that she gave a written statement mentioning the first and third incidents, but omitting the second one. The statement specified that those were the only times appellant had molested her. K.P. further testified that she did not reveal the second incident in her statement because she did not feel that she could trust Mr. LaFargue and Ms. Adams. However, K.P. stated that, between February 15 and March 13, she talked frequently about the incidents involving appellant with another school official, Ms. Mitzi, and that on March 13 she told Ms. Mitzi about the second incident because she felt that she could trust her.

The State also introduced the testimony of another female student, D.C. She stated that she was eighteen years old and that she had been in appellant's Health class the previous year. She testified that, in the autumn, she noticed that appellant had begun to stare at her, and that appellant began telling her that she was attractive and had a nice body. She stated that appellant commented in Gym class about her breasts jumping out of her shirt, and that, while she was grading papers in appellant's class one day, he rubbed her leg "a little too high" and told her she was doing a good job. Appellant was not charged with any offenses relating to his conduct toward D.C.

Appellant first contends that the trial judge erred in allowing D.C. to testify about appellant's conduct toward her because it was not relevant to the offenses with which he was charged. We do not agree. Arkansas Rule of Evidence 404(b) prohibits evidence of other crimes, wrongs, or acts to prove the character of a person and to show that he operated in conformity therewith, but permits such evidence to be admitted for other purposes, including proof of motive, intent, preparation, or plan. The testimony of D.C. showed plan and modus operandi by demonstrating that appellant had gone through a similar sequence with all of the girls — involving compliments of a sexual nature, staring at them, attempting to get them alone — that preceded the actual assaults. This sort of antecedent conduct was held to be admissible in *Hyatt v. State*, 63 Ark. App. 114, 975 S.W.2d 433 (1998). Furthermore, it showed appellant's depraved sexual instinct and proclivity for sexual predation upon young girls under his care. This goes to the heart of the pedophile exception to Rule 404(b), which permits evidence of a defendant's sexual acts with other children when it is helpful in showing a proclivity toward a specific act with a person or class of persons with whom the accused has an intimate relationship, *see Greenlee v. State*, 318 Ark. 191, 884 S.W.2d 947 (1994), and the pedophile exception is not limited to cases where all the victims are children in the same household — it has recently been declared to be applicable in classroom situations. *Butler v. State*, 349 Ark. 252, 82 S.W.3d 152 (2002). The admission or rejection of evidence under Rule 404(b) is left to the sound discretion of the trial court and will not be disturbed absent a manifest abuse of discretion. *Pickens v. State*, 347 Ark. 904, 69 S.W.3d 10 (2002). There was no abuse of discretion in the present case.

Appellant next contends that the trial court erred in refusing to allow introduction of K.P.'s initial written statement, which did not mention the incident in which she was penetrated by appellant. We disagree. At trial, K.P. admitted that her testimony differed from her earlier written statement, and when a witness admits to having made a prior inconsistent statement, Ark. R. Evid. 613(b) does not allow introduction of extrinsic evidence of the prior statement to impeach the witness's credibility. *Kennedy v. State*, 344 Ark. 433, 42 S.W.3d 407 (2001).

Affirmed.

HART and GLADWIN, JJ., agree.