**Steven Anthony SERA, Appellee,**

v.

**Larry NORRIS, Director, Arkansas Department of Corrections, Appellant.**

No. 04–1532.

United States Court of Appeals, Eighth Circuit.

Submitted: Dec. 15, 2004.

Filed: March 7, 2005.

Rehearing and Rehearing En Banc Denied April 28, 2005.*

---

* Judge Smith did not participate in the consideration or decision of this matter.

Teena L. Watkins, argued, Asst. Atty. Gen., Little Rock, AR, for appellant.

John Wesley Hall, Jr., argued, Little Rock, AR, for appellee.

Before MELLOY, BRIGHT, and BOWMAN, Circuit Judges.

BOWMAN, Circuit Judge.

Steven Anthony Sera was convicted by an Arkansas jury on eight criminal counts related to his use of Rohypnol, a so-called "date rape drug," to perpetrate sex crimes against two women in Arkansas. After the Arkansas Supreme Court affirmed his convictions on appeal, Sera filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (2000) challenging only his conviction on one count of rape. The District Court granted Sera's petition on the ground that the evidence was insufficient to support a finding of rape. Because we determine, in concordance with the Arkansas courts, that the evidence could lead a rational juror to find the elements of rape beyond a reasonable doubt, we reverse.

## I.

Sera came under investigation in the summer of 1997 after his wife ("Mrs.Sera") found and turned over to police a videotape depicting three sexual encounters between Sera and three different women who appeared to be unconscious. One of the women was Mrs. Sera's younger sister, Patty Coleman, a college student in Missouri. Police eventually identified the other two women as Tammy Deal, a resident of Arkansas, and Melanie Hataway, a resident of Texas. Charges were brought against Sera in Arkansas, Texas, and Missouri for drugging, kidnaping, and sexually assaulting or raping the three women on the videotape, as well as a fourth woman, Jackie Haygood, in Arkansas. We are called upon here only to address Sera's conviction in Arkansas for the rape of Deal, and we accordingly focus our discussion on the facts relating to that incident. We recount the facts in the light most favorable to the verdict. *See Jackson v.*

*Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

In late summer of 1996, Sera lived with his wife and daughter in Dallas, Texas, where he owned and operated a lumber company. After hearing that a lumber mill was closing in Warren, Arkansas, Sera began visiting Warren to investigate, purchase, and set up operations at the mill. On one of these visits at the end of August or early September 1996, Sera met Deal in a Warren bar. The two spoke for several minutes, and Sera later arranged for flowers to be delivered to Deal the next day. The two eventually began dating.

The first occasion on which Deal spent any significant time alone with Sera occurred in October 1996. Deal's cousin invited Deal's two children to her house for the afternoon, and upon hearing this, Sera invited Deal to accompany him on a drive. After taking the children to the cousin's house, Sera and Deal drove to nearby Monticello, Arkansas. During the drive to Monticello, Sera told Deal that he had a six-pack of beer in the trunk of the car and asked her if she would like one. Deal agreed, and Sera pulled the car over to the side of the road to get the drink from the trunk. Sera remained at the rear of the car for some time, prompting Deal to ask what was taking him so long. Sera replied that he was mixing himself a drink. When he returned to the car, Sera handed Deal a bottle of beer and continued driving. When Deal finished drinking the beer, Sera again pulled the car over and retrieved a second beer for her from the trunk of the car. Deal drank the second beer and the two drove around Monticello. Deal testified that from that point forward, she has no memory of most of the events of the afternoon. Without her knowledge, Sera drove her to the bed and breakfast at which he was staying in Warren. While Deal was unconscious and without her con-

sent, Sera penetrated her vagina with his penis and ejaculated on her face. These actions were recorded on the videotape found by Mrs. Sera. After the episode, Sera drove Deal to her cousin's house to pick up her children. Her cousin testified that Deal "seemed confused" and was no longer wearing the socks and tee-shirt that she had been wearing when she left on the trip with Sera. Tr. at 2093. Deal has no memory of picking up her children. Her next clear memory is of waking up the next morning for work. Upon awakening, nothing indicated to Deal that she had sexual intercourse the prior evening.

The couple's next trip was to a casino in Greenville, Mississippi. Again Sera packed beer in the trunk of his car. Sera gave Deal alcoholic drinks both on the drive to Greenville and at the casino. Deal testified that she cannot recall leaving the casino or the return trip to Warren. Her next memory is of waking up the following morning on the couch in the living room of the bed and breakfast. Sera insinuated that she had consumed too much alcohol the day before.

In late October or early November 1996, Deal accompanied Sera on a third out-of-town trip. The two drove to Little Rock, Arkansas, to dine at the Macaroni Grill restaurant. Along the way, Sera stopped and bought two individual cans of beer. Deal drank one of the beers and had a few drinks from the other. During dinner, Deal drank a glass of wine and a glass of water. Near the end of dinner, Deal went to the restroom. After she returned to the table and finished her water, she began to feel ill and have stomach cramps. Deal testified that her last recollection of the evening was walking to the car in the restaurant parking lot. She did not become aware again until the next morning when she awoke in Sera's bed at a bed and breakfast. She found herself wearing

nothing but a tee-shirt, but does not recall how she got to that state of undress. Deal continued to have stomach cramps and felt nauseated. She had diarrhea and vomiting the remainder of the day.

The couple's only consensual intimate encounter occurred in mid-November 1996 at a bed and breakfast. Deal testified that she was conscious throughout and that the encounter was not videotaped. Deal returned to her own home after the encounter; she did not stay overnight at the bed and breakfast. The two stopped dating soon thereafter. Deal's last encounter with Sera was on December 12, 1996, when she witnessed Sera holding an unconscious woman, whom Deal recognized as Haygood, in his arms as he entered the bed and breakfast.

In March 1998, Sera was tried in the Circuit Court of Bradley County, Arkansas, on eight counts, as summarized:

(a) Involving Deal and the trip to Monticello:

Count 1: Introduced Rohypnol into the body of Deal without her knowledge; Ark.Code Ann. § 5–13–210 (drugging another).

Count 2: Engaged in sexual intercourse or deviate sexual activity with Deal when she was incapable of consent because she was rendered physically helpless by the drugging; Ark.Code Ann. § 5–14–103 (rape).

(b) Involving Deal and the trip to the Macaroni Grill:

Count 3: Introduced Rohypnol into the body of Deal without her knowledge; Ark.Code Ann. § 5–13–210 (drugging another).

Count 4: Restrained Deal so as to interfere substantially with her liberty for the purpose of engaging in sexual intercourse, deviate sexual activity, or sexual contact; Ark.Code. Ann. § 5–11–102 (kidnaping).

Count 5: Engaged in sexual intercourse or deviate sexual activity with Deal when she was incapable of consent because she was rendered physically helpless by the drugging; Ark.Code Ann. § 5–14–103 (rape).

(c) Involving Haygood on December 12, 1996:

Count 6: Introduced Rohypnol into the body of Haygood without her knowledge; Ark.Code Ann. § 5–13–210 (drugging another).

Count 7: Restrained Haygood so as to interfere substantially with her liberty for the purpose of engaging in sexual intercourse, deviate sexual activity, or sexual contact; Ark.Code. Ann. § 5–11–102 (kidnaping).

Count 8: Engaged in conduct intended to culminate in the commission of the offense of rape of Haygood; Ark.Code. Ann. §§ 5–3–201, 5–14–103 (attempted rape).

*See* Amended Information at 1–2; Judgment and Commitment Order at 1–5.

In addition to the facts set out above, the evidence introduced at trial indicated that Mrs. Sera found a bottle labeled "Rohypnol" in Sera's suitcase following one of his out-of-town trips. Two pharmacologists testified regarding the effects of Rohypnol on the human body. Dr. ElSohly testified that ingestion of Rohypnol can cause hypnosis, total muscle relaxation, and loss of memory. After viewing the videotape, Dr. ElSohly concluded that the behaviors of Deal, Hataway, and Coleman shown therein were consistent with ingestion of Rohypnol. Dr. Tolliver similarly testified that, when ingested, Rohypnol will cause hypnosis, relax muscles, and cause anterograde amnesia. He stated that a person under the influence of Rohypnol can be talking and functioning yet

still not be able to remember what is happening during that time. Furthermore, Dr. Tolliver stated that combining Rohypnol with alcohol causes a magnification of the drug's effects, which can cause a deeper state of unconsciousness. The side-effects of the drug, including gastrointestinal problems and stomach cramping, may also become more severe when the drug is mixed with alcohol. Finally, after viewing the videotape, Dr. Tolliver agreed that the women's behaviors were consistent with the effects of Rohypnol.

Sera testified on his own behalf. He asserted that the women were simply drunk, not drugged, and that they consented to his sexual advances. Sera admitted to possessing Rohypnol, but claimed that a doctor in Mexico had prescribed it to treat his insomnia.

A jury convicted Sera of all eight counts but reduced the Count 2 rape charge stemming from the Monticello trip to the lesser included offense of sexual abuse in the first degree. The jury prescribed a sentence of years for each count, with the sum totaling eighty-five years' imprisonment. The longest single sentence was thirty years' imprisonment for Count 5, the rape of Deal on the evening of the Macaroni Grill trip. Accepting the jury's recommendation that Sera's sentences be served concurrently, the trial judge sentenced Sera to thirty years' imprisonment. Sera appealed his convictions to the Supreme Court of Arkansas, which affirmed. *Sera v. State*, 341 Ark. 415, 17 S.W.3d 61 (2000). Sera then filed a petition for a writ of certiorari in the United States Supreme Court, which was denied. *Sera v. Arkansas*, 531 U.S. 998, 121 S.Ct. 495, 148 L.Ed.2d 466 (2000). Foregoing any post-conviction relief in state court, Sera filed his petition for habeas corpus relief in federal court. Sera challenged only the rape conviction and argued that his due process rights were violated because there was not enough evidence to support a guilty verdict. Agreeing with Sera, the District Court set aside the rape conviction. *Sera v. Norris*, 312 F.Supp.2d 1100 (E.D.Ark.2004). The Director of the Arkansas Department of Corrections appeals the District Court's order.

## II.

The District Court concluded that the evidence was legally insufficient, as a constitutional matter, to support Sera's conviction on the charge that he raped Deal. This was a legal determination, which we review de novo. *King v. Bowersox*, 291 F.3d 539, 540 (8th Cir.), *cert. denied*, 537 U.S. 1093, 123 S.Ct. 693, 154 L.Ed.2d 641 (2002).

In the interests of finality and federalism, federal habeas courts are constrained by the Anti–Terrorism and Effective Death Penalty Act of 1996 (AEDPA) to exercise only a "limited and deferential review of underlying state court decisions." *Lomholt v. Iowa*, 327 F.3d 748, 751 (8th Cir.2003). Thus, a federal court may not grant a writ of habeas corpus with respect to any issue decided by a state court unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2). A state court decision is "contrary to" clearly established Supreme Court precedent if it "applies a rule that contradicts the governing law set forth in [the Court's] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of [the] Court and nevertheless arrives at a result different from [the

Court's] precedent." *Williams v. Taylor,* 529 U.S. 362, 405–06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A state court decision is an "unreasonable application of" clearly established Supreme Court precedent if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Id.* at 407–08, 120 S.Ct. 1495. As noted by the Supreme Court, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law *erroneously* or *incorrectly.*" *Id.* at 411, 120 S.Ct. 1495 (emphasis added). "Rather, that application must also be *unreasonable.*" *Id.* (emphasis added). Finally, a state court decision involves "an unreasonable determination of the facts in light of the evidence presented in the state court proceedings" only if it is shown that the state court's presumptively correct factual findings are rebutted by "clear and convincing evidence" and do not enjoy support in the record. 28 U.S.C. § 2254(e)(1); *Jones v. Luebbers,* 359 F.3d 1005, 1011 (8th Cir.2004), *cert. denied,* —— U.S. ——, 125 S.Ct. 670, 160 L.Ed.2d 507 (2004).

## III.

Sera alleges that there was insufficient evidence to find him guilty beyond a reasonable doubt of raping Deal on the evening of the Macaroni Grill trip. Therefore, he claims, his state court conviction vio-

lates the Due Process Clause of the Fourteenth Amendment and clear Supreme Court precedent that requires all elements of a crime be proved beyond a reasonable doubt.[1] *See Jackson,* 443 U.S. at 316, 99 S.Ct. 2781; *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). In support, Sera argues that evidence of sexual penetration, an essential element of rape, was absent and that the state courts improperly relied upon "other act" evidence admitted under Ark. R. Evid. 404(b) as direct evidence of guilt, i.e., to "bridge the gap" left by the lack of proof of sexual penetration. Brief for Appellee at 33 n.12.

In assessing whether there is sufficient evidence to support Sera's rape conviction, "the scope of our review ... is extremely limited." *Whitehead v. Dormire,* 340 F.3d 532, 536 (8th Cir.2003) (citations to quoted cases omitted). It is not relevant whether *we* believe that the evidence at trial established guilt beyond a reasonable doubt. *See Jackson,* 443 U.S. at 318–19, 99 S.Ct. 2781. Rather, we must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (emphasis in original). This standard recognizes that it is the province of the fact-finder, not this court, "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.*

---

1. Pursuant to this argument, Sera asserts that the decision of the Arkansas Supreme Court upholding the rape conviction is simultaneously "contrary to" federal law, an "unreasonable application of" federal law, and an "unreasonable determination of the facts in light of the evidence presented." Brief for Appellee at 28, 30. As the District Court explained, however, the legal standards applied by the Arkansas Supreme Court, though based on state law, are not contrary to United States Supreme Court precedent. *Sera,* 312

F.Supp.2d at 1113–14. Moreover, Sera has made no attempt to rebut the state court's factual findings with clear and convincing evidence to the contrary. The true essence of Sera's argument is that the Arkansas Supreme Court's *application* of the law was unreasonable because, in applying the presumptively correct facts to the correct law, the court erroneously concluded that the evidence was sufficient to establish guilt beyond a reasonable doubt. We address this sufficiency-of-the-evidence argument herein.

The essential statutory elements of rape to be proven under Arkansas Code § 5–14–103 were: (1) sexual intercourse or deviate sexual activity (2) with a physically helpless person.[2] Only the first element is in controversy. Sera asserts, and we readily acknowledge, that the record contains no direct evidence of sexual intercourse or deviate sexual activity. The *corpus delicti* of the crime, however, may be proven in whole or in part by circumstantial evidence. *See United States v. Wright,* 340 F.3d 724, 730 (8th Cir.2003); *Hill v. Norris,* 96 F.3d 1085, 1088 (8th Cir.1996); *see also* 65 Am.Jur.2d *Rape* § 69 (2001) ("The corpus delicti may be proved in whole or in part by circumstantial evidence, the same as any other fact in controversy."). "[I]t is well-settled that the jury is entitled to consider circumstantial evidence exactly as it would direct evidence." *United States v. Lam,* 338 F.3d 868, 871 (8th Cir.2003). As the Supreme Court has recognized,

> circumstantial evidence may in some cases point to a wholly incorrect result. Yet this is equally true of testimonial evidence. In both instances, the jury is asked to weigh the chances that the evidence correctly points to guilt against the possibility of inaccuracy or ambiguous inference. In both, the jury must use its experience with people and events in weighing the probabilities. If the jury is convinced beyond a reasonable doubt, we can require no more. *Holland v. United States,* 348 U.S. 121, 140, 75 S.Ct. 127, 99 L.Ed. 150 (1954).

■ While physical or forensic evidence of rape is eminently useful when found, its absence does not necessarily mandate acquittal. Indeed, when drugs are used to incapacitate a date-rape victim, there is often no direct evidence of the rape.[3] We find, however, that the circumstantial evidence presented in this case is sufficient to support a finding of rape. We agree with the Arkansas Supreme Court's conclusion that "[t]he evidence was not such that the jury was reduced to mere speculation and conjecture." *Sera,* 17 S.W.3d at 75. As summarized by the Arkansas Supreme Court, the evidence could lead a reasonable fact finder to convict Sera of the rape of Deal:

> It was not speculation for the jury to believe Deal's testimony that she had not had too much to drink. Nor was it conjecture for the jury to believe that Deal's lack of memory was due to a documented side effect of Rohypnol ingestion known as anterograde amnesia. As Dr. Tolliver, testified, "While you are actually under the effect of the drug, you may not remember some of the things you do or some of things that are

---

**2.** Arkansas law in effect at the time of the offense prescribed that a "person commits rape if he engages in sexual intercourse or deviate sexual activity with another person ... who is incapable of consent because [the person] is physically helpless." Ark.Code Ann. § 5–14–103(a)(2) (1993). The statute defined sexual intercourse as the "penetration, however slight, of the labia majora by a penis." Ark.Code Ann. § 5–14–101(9) (Supp.1995). "Deviate sexual activity" was defined as "any act of sexual gratification involving ... the penetration, however slight, of the anus or mouth of one person by the penis of another person; or ... the penetration, however slight, of the labia majora or anus of one person by any body member or foreign instrument manipulated by another person." *Id.* at § 5–14–101(1).

**3.** It is self-evident that often the victim of a date-rape drug cannot testify about the event and physical evidence of the rape has long disappeared when the rape is later discovered. *See* Jean Seligmann & Patricia King, *'Roofies': The Date–Rape Drug,* Newsweek, Feb. 26, 1996 at 54 (noting that women who are raped after being drugged with Rohypnol "can't usually remember any details of the crime"). It is equally self-evident that the perpetrator in date-rape-drug cases may drug the victim for these very reasons.

done to you or what conversations you have or what is, what your experiences are." Dr. Tolliver further stated, "You can actually be functioning. You can be talking. You can be carrying on a conversation just like we are now and you may remember a little bit of it or you may, even may remember all of it or you may remember none of it or you may remember part of it." Regarding the "Macaroni Grill" incident, Dr. Tolliver stated that Deal's complaints of not being able to remember the trip home from the restaurant, and the stomach pains and cramping she experienced, would also be consistent with Rohypnol ingestion, especially when taken with alcohol. The sickness she felt was consistent with Deal's experience after the "Monticello" incident in which the videotape shows unequivocally that she was unconscious throughout most of the sexual encounter and, in fact, snored occasionally. The evidence showed that during the relevant time period Sera had access to the drug Rohypnol. Clearly, Sera had the opportunity, the scheme, or plan in place, and he had already carried it out on one prior occasion with Deal. The jury could reasonably conclude that Deal's surprise awakening the next morning in Sera's bed in a state of relative undress to be consistent with sexual activity of a nonconsensual nature.

*Id.* at 75–76.

We cannot say the decision of the Arkansas Supreme Court in any way contravenes the standards laid down by the AEDPA. The evidence allowed the jury to find that on the evening of the Macaroni Grill trip Sera drugged Deal with Rohypnol, fully aware that the drug would leave Deal incapacitated and without memory. The jury was not required to check its common sense at the deliberation room door; from the evidence presented the jury could conclude that Sera's purpose for the drugging was more sinister than just creating the opportunity to watch Deal sleep. The jury heard Deal testify that she awoke in Sera's bed with no memory of how she got there. She found herself wearing only a tee-shirt but does not remember undressing. Moreover, the jury watched the videotape depicting Sera's actions on the day the couple traveled to Monticello. The videotape shows Sera penetrating Deal's vagina on several separate instances (each from a varied camera angle), and Deal is heard snoring. Sexual intercourse, the *corpus delicti* of rape, is clearly evident on the videotape.[4] The circumstances surrounding the Monticello trip and the Macaroni Grill trip are substantially similar. In both, Deal developed anterograde amnesia after consuming drinks provided by Sera. In both, Sera took Deal to a bed and breakfast while she was in the state of unconsciousness. In both, Deal's state of dress was altered when she awoke. Deal testified that the way she felt when awaking in Sera's bed the morning after the Macaroni Grill trip was consistent with the way that she felt

---

**4.** While the jury reduced the charge of rape in connection with the Monticello trip to the lesser included offense of sexual abuse in the first degree, we do not speculate on the jury's reasons for the decision. Moreover, the jury's verdict on charges arising from the Monticello trip does not dictate its verdict on charges arising from the Macaroni Grill incident. *See United States v. Powell*, 469 U.S. 57, 67, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984) ("This review [of the sufficiency of the evidence] should be independent of the jury's determination that evidence on another count was insufficient."); *see also Dunn v. United States*, 284 U.S. 390, 394, 52 S.Ct. 189, 76 L.Ed. 356 (1932) ("That the verdict may have been the result of compromise, or of a mistake on the part of the jury, is possible. But verdicts cannot be upset by speculation or inquiry into such matters.").

after the video-taped episode.[5] The evidence relating to the Monticello trip is thus indicative of Sera's plan of action, or modus operandi, on the evening of the Macaroni Grill trip. Taking the evidence together, the jury reasonably could have inferred that sexual penetration occurred on the evening of the Macaroni Grill trip.[6] While we recognize that the evidence of rape was not overwhelming, we nonetheless find that it was sufficient for "any reasonable juror" to find Sera guilty beyond a reasonable doubt.

Sera's argument that the Arkansas Supreme Court improperly relied upon evidence of his transgressions against Coleman, Hataway, and Haygood as evidence of guilt, in violation of Ark. R. Evid. 404(b)[7] and the limiting instructions given the jury, is without basis. Contrary to Sera's assertion, the Arkansas Supreme Court did not rely on the evidence of Sera's transgressions against other women to support its holding that the evidence was sufficient for a reasonable juror to find that Sera raped Deal on the evening of the Macaroni Grill trip. *Sera*, 17 S.W.3d at 75–76. As noted by the District Court, *Sera*, 312 F.Supp.2d at 1122, 1123, the only 404(b) evidence relied upon by the Arkansas Supreme Court in its analysis of the sufficiency of the evidence was evidence showing that Sera had drugged and sexually assaulted Deal on the couple's earlier trip to Monticello. *See Sera*, 17 S.W.3d at 76 ("Clearly, Sera had the opportunity, the scheme, or plan in place, and he had already carried it out on one prior occasion with Deal."). In evaluating the decision of the state supreme court, we need not address evidence not relied upon by that court in reaching its holding. To the extent, if any, that Sera challenges the state court's reliance on Sera's actions against Deal on the evening of the Monticello trip to support a finding of rape on the evening of the Macaroni Grill trip, we find no violation of his due process rights.

Arkansas Rule of Evidence 404(b), like its federal counterpart, prohibits the use of evidence of a defendant's other crimes, wrongs, or acts solely to show his character or to prove that he acted in conformity therewith, but permits such evidence to be used for other purposes, including to prove motive, intent, preparation, or plan. The evidence of Sera's actions on the evening of the Monticello trip showed plan and modus operandi by demonstrating that Sera had gone through a similar sequence—taking Deal on a drive to another town, drugging her with Rohypnol such that she was unconscious, taking her to a bed and breakfast, removing her clothes—

---

**5.** Although Deal testified that she did not know whether she had sexual intercourse with Sera on the evening of the Macaroni Grill trip, this is consistent with Deal's testimony that she did not know whether she had sexual intercourse with Sera on the evening of the Monticello trip—an evening on which sexual intercourse undeniably occurred. *See* Tr. at 2051.

**6.** The District Court determined that the *"only* evidence" to support the sexual intercourse or deviate sexual activity prong of the rape statute was the evidence of sexual penetration during the Monticello incident. *Sera*, 312 F.Supp.2d at 1123–24 (emphasis in origi-

nal). As shown by the evidence recounted herein, the record does not support the District Court's overly limited view of the evidence.

**7.** Ark. R. Evid. 404(b) (1997) provided as follows:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

preceding both assaults.[8] Also indicative is the fact that the events were close in time—the Monticello incident occurring only about two weeks before the Macaroni Grill incident. *Cf. United States v. LeCompte*, 99 F.3d 274, 278 (8th Cir.1996) (precluding evidence of past sexual assaults occurring eight to ten years earlier and noting that "the events were far apart in time"). The Arkansas Supreme Court did not rely upon evidence of the Monticello incident as direct evidence of Sera's guilt. Rather, the court properly relied upon the evidence of Sera's earlier abuse as evidence of Sera's plan, pattern, or modus operandi on the evening of the Macaroni Grill trip.[9] *See id.* at 277–78; *Garner v. State*, 81 Ark.App. 309, 101 S.W.3d 857, 859–60 (2003). Sera's due process rights were not violated by the state court's reliance on Sera's sexual abuse of Deal two weeks earlier as evidence supporting the jury's conviction of rape on the evening of the Macaroni Grill trip.

■ While we recognize that the evidence presented in this case could support conflicting inferences, we must presume on habeas review "that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Jackson*, 443 U.S. at 326, 99 S.Ct. 2781. "The evidence need not exclude every reasonable hypothesis except guilt."

*United States v. Williford*, 309 F.3d 507, 509 (8th Cir.2002) (citation to quoted case omitted); *see also, Holland*, 348 U.S. at 139–40, 75 S.Ct. 127 (rejecting argument that circumstantial evidence must exclude every reasonable hypothesis other than guilt); *Jackson*, 443 U.S. at 326, 99 S.Ct. 2781 (same). This case is similar to a host of others in which this Court affirmed convictions based solely on circumstantial evidence despite our recognition that alternate possibilities existed. *See, e.g., Hill*, 96 F.3d at 1089 (upholding murder conviction despite recognizing the possibility that "the true killer sold the proceeds from the killing to the hitchhiking [defendant] in the hour or so possibly separating the time of the murder from [defendant's] appearance with [the victims] property."); *United States v. Bates*, 77 F.3d 1101, 1105 (8th Cir.) (upholding conviction for felon in possession of a firearm where the defendant was found dressed in hunting apparel with two other individuals in a boat containing two shotguns, dead ducks, and decoys, despite recognizing the possibility that defendant was a wilderness guide and not hunting), *cert. denied*, 519 U.S. 884, 117 S.Ct. 215, 136 L.Ed.2d 149 (1996); *Rhode v. Olk–Long*, 84 F.3d 284, 288 (8th Cir.1996) (upholding felony murder conviction despite recognizing that "some parts of the

---

8. We are not concerned here with whether this evidence was properly admitted by the state trial court, as we are prohibited from reviewing matters of state evidentiary law. *See Clark v. Groose*, 16 F.3d 960, 963 (8th Cir.), *cert. denied*, 513 U.S. 834, 115 S.Ct. 113, 130 L.Ed.2d 59 (1994). We note that, generally, "a state court's evidentiary rulings that are based on state law do not implicate a criminal defendant's constitutional rights with respect to the sufficiency of the evidence and thus are not cognizable on habeas review." *Weston v. Dormire*, 272 F.3d 1109, 1113 (8th Cir.2001); *see also Estelle v. McGuire*, 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) ("[I]t is not the prov-

ince of a federal habeas court to reexamine state-court determinations on state-law questions."). The admission of evidence at a state trial will only form the basis for federal habeas relief when the evidentiary ruling "'infringes upon a specific constitutional protection or is so prejudicial that it amounts to a denial of due process.'" *Clark*, 16 F.3d at 963 (quoting *Turner v. Armontrout*, 845 F.2d 165 (8th Cir.1988)).

9. While the fact that Sera followed a pattern is certainly *relevant* to his guilt, all evidence must be relevant to guilt to be admitted. Fed. R.Evid. 403.

record could be read to support [the defendant's] theories that either her parents or her children could have inflicted the fatal injuries" on the defendant's child), *cert. denied,* 519 U.S. 892, 117 S.Ct. 232, 136 L.Ed.2d 163 (1996); *see also Jackson,* 443 U.S. at 325, 99 S.Ct. 2781 (although it was possible that the victim "willingly removed part of her clothing and then attacked [defendant] with a knife when he resisted her advances," thus requiring the defendant to shoot in self-defense, the Court presumed that the trier of fact resolved conflicting inferences in favor of the prosecution and deferred to that resolution).

Based on the evidence, and applying the *Jackson v. Virginia* standard, we are satisfied that the Arkansas Supreme Court's resolution of this issue was not an unreasonable application of clearly established federal law. The District Court's grant of habeas corpus is reversed, Sera's habeas petition is dismissed, and Sera's conviction and sentence are reinstated.

BRIGHT, Circuit Judge, dissenting.

I dissent. I agree with the conclusion of Magistrate Judge Jerry W. Cavaneau, who granted the writ in the district court, setting aside Sera's conviction for rape of Tammy Deal in connection with the Macaroni Grill incident. The Magistrate Judge stated:

Viewing the evidence in the light most favorable to the state and presuming that all reasonable inferences were drawn in favor of the state, no rational trier of fact could have found beyond a reasonable doubt from the evidence in the record that [Sera] was guilty of raping the victim as charged in Count 5 of the information and as defined by Arkansas law. *See Ward v. Lockhart,* 841 F.2d 844, 847–48 (8th Cir.1988) ("Without that essential proof [of every element of the offense of burglary], we

must conclude that the jury exceeded the bounds of legitimate inference, and engaged in speculation in finding Ward guilty on that count.")

Appellant's App. at 741.

No evidence, direct or circumstantial, establishes or shows that Sera engaged in sexual intercourse with Deal as alleged in Count 5. Conviction of the serious crime of rape requires proof that is lacking here. *See Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).